### *In re* STATE CENSUS.

1. Const. art. 3, § 5, providing that the legislature shall provide by law for the enumeration of the inhabitants of the state in the year 1895, and shall apportion the number of senators and representatives accordingly, is mandatory, but, since there is no power that can compel a legislature to take affirmative action in enacting laws, its action under the constitutional provision depends solely on its own volition, guided by its sense of public duty and responsibility.

2. In case the legislature should fail to provide by law for the enumeration of the inhabitants of the state in the year 1895, as required by Const. art. 3, § 5, as a basis for the apportionment of senators and representatives, the existing apportionment would remain in force.

(Opinion filed Feb. 18, 1895.)

The opinion of the judges of the supreme court on the necessity for legislative action under Const. art. 3, § 5, was requested by the governor, and the following response was made:

Supreme Court Chambers,

Pierre, February 18, 1895.

To His Excellency, Charles H. Sheldon, Governor of the State of South Dakota:

Sir: We have the honor to acknowledge the receipt of your communication of February 15, 1895, which reads as follows:

"Executive Chamber, February 15, 1895.

"To the Honorable Judges of the Supreme Court:

"Gentlemen: The house of representatives of the legislature of this state now in session has this day presented to me the following preamble and resolution:

"'Whereas, section 5 of article 3 of the constitution requires the legislature to provide by law for the enumeration of the inhabitants of the state in the year 1895; and, whereas,

many members of this body believe that such provision is not imperatively necessarily: Therefore, be it resolved that the governor of this state is hereby requested to procure an opinion from the supreme court as to the imperativeness of said section and deliver the same to this body at the earliest day possible.'

—''In obedience to which I have the honor to respectfully request your opinion touching the question therein presented, that it may be communicated to the body from which the resolution came. Very respectfully,

"C. H. Sheldon,

''Governor of South Dakota.''

In answer thereto we most respectfully submit the following reply.

Section 13, art. 5, of the state constution, requiring the judges of the supreme court to give their opinion to the executive, seems to be limited in its scope to the executive department; and on February 23, 1893 in a communication to your excellency, we declined to express any opinion upon the matter then pending before the legislature, and gave our reasons therefor at length. *In re* Construction of Constitution (S. D.) 54 N. W. 651. The question then presented was one that might involve property rights, and we deemed it improper to express an opinion in advance upon the effect of the legislation then pending. But the question now presented by the house of representatives seems to involve no property rights or rights of individuals, and, while we entertain some doubt as to our duty in the premises, we have concluded to briefly express our views upon the question presented. The section of the constitution referred to by the house of representatives in the resolution you transmit to us reads as follows: ''The legislature shall provide by law for the enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five and every ten years thereafter, and at its first regular session after each enumeration, and also after each enumeration made by authority of the United States, but at no other time, the leg-

islature shall apportion the senators and representatives ac·
cording to the number of inhabitants, excluding Indians not
taxed and soldiers and officers of the United States army and
navy; provided that the legislature may make an apportion-
ment at its first session after the admission of South Dakota as a
state. There appear to be three classes of provisions in the
constitution. The first class embraces constitutional provisions
negative and prohibitory in their character, and are self-exe-
cuting. All the laws, therefore, in force when the constitution
was adopted, in conflict with these provisions, were necessarily
abrogated, and laws subsequently enacted in conflict therewith
would necessarily be void, in so far as they conflict with such
provisions. The second class embraces such constitutional
provisions as require certain provisions to be had in order to
render valid the enactment of laws or the accomplishment of
the purposes of the legislature. These provisions must be sub-
stantially complied with, or the laws enacted or proceedings
taken may be invalid. The third class embraces provisions re-
quiring the legislature to enact certain laws, ·but prescribes no
penalty for a failure to perform the duty. These provisions
may be in their nature mandatory, but there is no authority
vested in any department of the government to enforce the
command. The section under consideration comes within the
latter class. The provisions of this section are in their nature
mandatory to the legislature to enact the specified legislation.
But under our system of government there is no power to com-
pel the legislative department to enact laws. Constitutions
may restrict legislative powers, and declare what laws shall not
be valid; but from the very nature of legislative power, its ex-
ercise in a particular case must depend upon the volition of the
legislature. Responsibility to their constituents and a sense of
public duty are the only incentives that can prompt legislative
action under this class of constitutional provisions. It will,
therefore, be readily perceived that a categorical answer to the
question propounded cannot with safety be given. We may

say, however, that if the legislature should fail at this session to enact any law as required by the section of the constitution under consideration, the present apportionment law would undoubtedly remain in force, and subsequent legislation would be valid. This seems to have been the view of the supreme court of Colorado, and in speaking of the failure of the legislature to enact an apportionment law at its first session after an enumeration of the inhabitants of that state, under a constitutional provision quite similar to the provision in our constitution, that learned court says: "The bill having been vetoed by the governor, and the legislative assembly having failed to pass it notwithstanding the veto, the existing legislation upon the subject matter of the bill remains undisturbed and in force." *In re* Veto Power —Special Session of General Assembly, 9 Colo. 642, 21 Pac. 477. These views will undoubtedly enable the legislature to properly and intelligently discharge its duty upon this subject, and adopt such course as in its judgment may seem to be for the best interests of the state.

Your most obedient servants.

DIGHTON CORSON,
ALPHONSO G. KELLAM,
HOWARD G. FULLER,

Judges of the Supreme Court of the State of South Dakota.