In the Matter of the Request for an AD-VISORY OPINION CONCERNING THE CONSTRUCTION OF H.B. 1255, H.B. 1132, AND H.J.R. 1004.

No. 17036.

Supreme Court of South Dakota.

May 23, 1990.

TO HIS EXCELLENCY, GEORGE S. MICKELSON, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA

Pursuant to the authority vested in the Governor under Article V, Section 5 of the South Dakota Constitution, you have requested an opinion of the Supreme Court

on important questions of law involved in the exercise of your executive power upon the following facts:

The 1990 Legislature has passed and [you] have signed HB 1255, ... which reads as follows:

"The Governor may enter into negotiations, subject to the approval of the Legislature, for the investment in or financing of an agricultural processing facility. The negotiations shall encompass all terms and conditions appropriate to the financing of an agricultural processing facility."

Further, the 1990 Legislature has passed and [you] have signed HB 1132 ... which revises provisions relating to the Agriculture and Business Development Finance Authority, including clarifying the right to invest in corporate debt. obligations and enter into leases with borrowers to finance the cost of agriculture enterprises. In addition, SDCL 1–16E–8 provides that the Authority may make commitments, loans or deposits to lenders to finance the cost of business enterprises, to finance the working capital needs of the businesses, and to refinance existing indebtedness. This Act has an emergency clause.

In addition to the foregoing, the issue of HJR 1004 ... [was pending in] the Legislature. [You advise that t]his resolution [if approved] would submit to the electorate a constitutional amendment to allow the state to acquire by purchase or appropriation all or any portion of land, structures, facilities or equipment necessary to the processing, refinement, manufacture, distribution and sale of agricultural products.

[Attorney General Opinion No. 88–32 put] in question the authority of the state of South Dakota, or any agency or authority thereof, to take an equity position in agricultural processing companies who are interested in commencing operation in the state of South Dakota. Currently, an agricultural processing company has expressed an interest in starting a corn wet-milling plant in South Dakota. A corn wet-milling plant is one which processes sweeteners and starches—i.e.,

glucose, fructose, corn syrups, and ethanol—off the corn kernel so that the by-products can be further processed. This company is also considering alternative states. If [the state is] to secure this important economic development ... which has the potential of creating jobs and enhancing the financial conditions of the agricultural segment of our state, and which affects the entire economy of this state and thus state government, [you advise that you] must know the extent of the state's authority to make · financial commitments in order to fulfill [your] obligations under HB 1255.

[You are] requesting [our] opinion regarding the exercise of [your] executive power under the foregoing measures and the laws and Constitution of the state of South Dakota, particularly Article XIII § 1 and § 2 and Article XXIX § 1. Specifically, without the passage of additional constitutional [amendments], may the state:

1.  appropriate money to buy, construct, and operate a corn wet-milling plant in South Dakota pursuant to Article XXIX, § 1 of our constitution?
2.  become a part owner of an agricultural processing facility in South Dakota pursuant to Article XIII, § 1 of our constitution?
3.  acquire an equity position in an agricultural processing facility in South Dakota pursuant to Article XIII, § 1 of our constitution?
4.  incur indebtedness to finance a privately-owned agricultural processing facility pursuant to Article XIII, § 2 of our constitution?

Initially, it is important to note that Article XI, § 2 of our constitution, which provides that taxes shall be levied and collected for public purposes only, generally prohibits the state from entering into private businesses. Said provision precluded the state from entering into the business of selling gasoline in *White Eagle Oil & Refining Co. v. Gunderson*, 48 S.D. 608, 205 N.W. 614 (1925). Additionally, Article XIII, § 1 of the constitution, which permits the state to own and conduct proper busi-

ness enterprises for the purpose of developing resources and improving economic facilities of the state, did not authorize the sale of gasoline by the state, as petroleum and its products were not sufficient as natural resources of the state to place the business within this provision. *Id.*

1. *May the state appropriate money to buy, construct, and operate a corn wet-milling plant in South Dakota pursuant to Article XXIX, § 1 of the South Dakota Constitution?*

■ Article XXIX, § 1 of our constitution provides in part:

[T]he Legislature may provide by law and appropriate money to buy or construct and operate flouring mills and packing houses within the state, if, in the future, and in the judgment of the Legislature, the public necessities may so require.

The first question turns on whether a corn wet-milling plant comes within the meaning of "flouring mills" as used in Article XXIX, § 1. As indicated above, a corn wet-milling plant is one which processes sweeteners and starches—that is glucose, fructose, corn syrups, and ethanol—off the corn kernel so that the by-products can be further processed. A flouring mill, on the other hand, grinds grain for food. *See* 17 Words and Phrases *Flouring Mill* 280-1 (1958). Since the constitutional provision uses the specific language "flouring mills," we conclude that such language does not include other agricultural processing facilities such as the corn wet-milling plant described.

2. *May the state become a part owner of an agricultural processing facility in South Dakota pursuant to Article XIII, § 1 of the South Dakota Constitution?*

■ Article XIII, § 1 provides in part as follows:

**§ 1. State enterprises—Legislative vote required—Defense of state—Rural credits—Maximum indebtedness.**

For the purpose of developing the resources and improving the economic facilities of South Dakota, the state may engage in works of internal improvement, may own and conduct proper business enterprises, may loan or give its credit to, or in aid of, any association, or corporation, organized for such purposes. But any such association or corporation shall be subject to regulation and control by the state as may be provided by law. No money of the state shall be appropriated, or indebtedness incurred for any of the purposes of this section, except by the vote of two-thirds of the members of each branch of the Legislature.... The limit of indebtedness contained in § 2 of this article shall not apply to the provisions of this section, but the indebtedness of the state for the purposes contained in this section shall never exceed one-half of one per cent of the assessed valuation of the property of the state[.]

By virtue of this provision, the state may own and conduct a business enterprise provided four requirements are satisfied. Those requirements are:

1. the enterprise is for the purpose of developing the resources and improving the economic facilities of the state;

2. no money of the state is appropriated or any indebtedness incurred for the enterprise unless approved by a two-thirds vote of each branch of the legislature;

3. the indebtedness of the state for Article XIII, § 1 purposes remains within the stated limit; and

4. the enterprise is "proper" for the state to conduct.

■ An agricultural processing facility could meet these requirements. The first requirement is satisfied because agricultural commodities are an important resource of the state, and a facility to process those commodities would improve the state's economic facilities. Compliance with the second and third requirements is completely within the ability of the legislature. The debt limitation, however, may substantially restrict the scope of any enterprise. Although the enterprise would not be subject to the $100,000 debt limit of Article XIII, § 2, the debt incurred, together with all other Article XIII, § 1 debt, could not exceed one-half of one percent of the assessed valuation of the property of

the state.[1] A corn wet-milling plant comes within the "proper business enterprises" referred to in Article XIII, § 1, and satisfies the fourth requirement. This is especially so if the enterprise is organized for the purpose of developing the resources and improving the economic facilities of South Dakota. In fact, an enterprise organized for such a purpose is precisely the type of enterprise that is proper for the state to conduct because the promotion, stimulation, and development of the general economic welfare and prosperity of the state is recognized as a legitimate public purpose. *See Clem v. City of Yankton*, 83 S.D. 386, 160 N.W.2d 125 (1968). Therefore, the state may own and conduct an agricultural processing facility. In view of the debt limitation, however, this may be an extremely limited power.

Whether the state may become a *part* owner of an agricultural processing facility in South Dakota is controlled by the language of Article XIII, § 1 which states: "[T]he state ... may *own and conduct* proper business enterprises, ..." (emphasis added). Although we conclude that the state may own and conduct an agricultural processing facility in South Dakota, we cannot conclude that the state may become a *part* owner. To own and conduct implies full management, control, and ownership. The difference between a full owner and a part owner is substantial, especially when the state is involved.

The precise meaning of the word "own" depends upon the context in which it is used. *See Bare v. Cole*, 220 Iowa 338, 260 N.W. 338 (1935). When the word stands alone and is unqualified by reference to limited ownership, then absolute ownership is presumed. *See Ramsey v. Leeper*, 168 Okla. 43, 31 P.2d 852 (1933). In this case, "own" is unqualified and stands alone, indicating that part ownership is not included within the state's authority. The context suggests the same conclusion. Elsewhere in Article XIII, § 1, a limitation placed upon the state's power to loan money to an

association or corporation requires: "regulation and control [of the association or corporation] by the state." This language suggests that the state may become involved in a project to develop the resources of the state, but only if its authority over the project is to be absolute. Partial ownership is inconsistent with such authority. Therefore, the answer to question #2 is no.

3. *May the state acquire an equity position in an agricultural processing facility in South Dakota, pursuant to Article XIII, § 1 of the South Dakota Constitution?*

■ The answer to this question is also no, in part for the same reasons expressed in response to question 2. An equity position is similar to part ownership, which is not allowed. This is especially so if obtaining the equity position involved relinquishing the regulation and control generally required.

Whether the state may acquire an "equity position" was discussed at length in the 1987–1988 Bennial Rep. S.D. Att'y Gen. 240 which states at page 251–53:

Of critical importance to the inquiry is the 1936 amendment to Article XIII, § 1. Prior to that amendment, Article XIII, § 1 provided:

For the purpose of developing the resources and improving the economic facilities of South Dakota, the state may engage in works of internal improvement, may own and conduct proper business enterprises, may loan or give its credit to, or in aid of, any association, or corporation, *and may become the owner of the capital stock of corporations, organized for such purposes* ... (emphasis added).

The 1936 amendment, among other things, deleted the grant of authority for the state to own stock in corporations.... I find it significant that the state once had such power, and it was withdrawn by the people.

---

**1.** Unless specifically exempted, all indebtedness the state incurs for the purpose of developing the resources and improving the economic facilities of the state is subject to the Article XIII,

§ 1 debt limitation, even if the debt is incurred pursuant to another constitutional provision. *See In re Opinion of the Judges*, 43 S.D. 635, 177 N.W. 812 (1920).

Usually amendments are adopted for the express purpose of making a change in the existing system. Particularly applicable in the case of amendments are the rules relating to the intent of the framers and adopters and attainment of the object of a constitution. "The courts are under the duty to consider the old law, the mischief, and the remedy, and to interpret the constitution broadly to accomplish the manifest purpose of the amendment." 16 Am.Jur.2d *Constitutional Law* § 88 at 415 (1979) (footnotes omitted). This court followed this mandate in *State v. Reeves*, 44 S.D. 568, 184 N.W. 993 (1921).

.    .    .    .    .

*South Dakota Auto Club v. Volk*, 305 N.W.2d 693, 697 (1982 [1981])....
Viewing the 1936 amendment in that light, and in conjunction with the other provision of the amendment limiting county rural credit loans, it appears to me that the people of South Dakota intended to deny the State the power to own stock in a corporation.... In my opinion, the direct investment in an equity position is not permissible.

While I am cognizant of the difficulties this interpretation presents in terms of the practicalities of the investment world, I do not believe the Legislature can exercise a power the people have specifically withdrawn simply by passing a statute.

We agree. Since the people of South Dakota have explicitly withdrawn the state's authority to be an owner of capital stock of corporations, the state may not acquire an equity position in an agricultural processing facility.

We also note that under Article XIII, § 1 the state may loan or give its credit to, or in aid of, any association, or corporation, organized for the purpose of developing the resources and improving the economic facilities of South Dakota, provided again however, that "any such association or corporation shall be subject to regulation and control by the state as may be provided by

law." For the reasons set forth above in 2 and below in 4, this requirement would appear to be contrary to an equity position.

4. *May the state incur indebtedness to finance a privately-owned agricultural processing facility, pursuant to Article XIII, § 2 of the South Dakota Constitution?*

■ The state could incur indebtedness to finance an agricultural processing facility subject to the debt limitations of Article XIII, § 2. However, the limitations of Article XIII, § 1 concerning regulation and control would apply because in developing the state's resources, the state is incurring indebtedness to finance a *privately-owned* agricultural processing facility. It is our conclusion that the requirement that "any such association or corporation shall be subject to regulation and control by the state as may be provided by law" implies more regulation and control than a private corporation is subject to under the South Dakota Business Corporation Act. SDCL Title 47. Being subject to regulation and control by the state as may be provided by law is inconsistent with being a "privately-owned" agricultural processing facility. In addition, the corporation receiving the financial assistance must have been organized for the purpose of developing the state's resources and improving its economic facilities.

/s/ George W. Wuest
Chief Justice George W. Wuest
/s/ Robert E. Morgan
Justice Robert E. Morgan
/s/ Frank E. Henderson
Justice Frank E. Henderson
/s/ Richard W. Sabers
Justice Richard W. Sabers
/s/ Robert A. Miller
Justice Robert A. Miller

The final question, implicit within all four questions, is whether the "authority," [2] as opposed to the state, is subject to the "debt" and other limitations in Article XIII, §§ 1 and 2 and Article XXIX, § 1 of the South Dakota Constitution. We decline to address this question because it is beyond

2. The agriculture and business development au-      thority. SDCL 1–16E–3(2).

the scope of our authority under Article V, § 5 of the South Dakota Constitution.

As previously indicated, the Governor has authority "to require opinions of the Supreme Court upon important questions of law *involved in the exercise of his executive power* and upon solemn occasions." (emphasis added). S.D. Const. art. V, § 5. As indicated by the emphasized language, this court may not render an advisory opinion to the Governor unless there is a question regarding the discharge of the Governor's duties. *In re Opinion of the Judges,* 61 S.D. 107, 246 N.W. 295 (1933); *see also To His Excellency Wollman,* 268 N.W.2d 820 (S.D.1978) (court is not constitutionally empowered to render an opinion when there is no executive action contemplated). Since the authority's ability to become involved with an agricultural processing facility does not involve the exercise of executive power, we cannot pass judgment in this opinion about any constitutional limitations on the authority. *See In re Opinion of the Supreme Court,* 257 N.W.2d 442, 446 (S.D.1977) (Wollman, J., concurring). The only required exercise of executive power with respect to the authority is to appoint the directors, who, in turn, govern the authority. SDCL 1–16B–8 and SDCL 1–16B–51. Although the scope of the constitutional restrictions applicable to the authority constitutes an important question of law under Article V, § 5 of the South Dakota Constitution, it does not involve exercise of the Governor's executive power. In effect, we would be giving an advisory opinion to the agriculture and business development finance authority, and such an opinion exceeds our authority.

We express no opinion on HJR 1004 (see appendix) because it does not involve the exercise of executive power of the Governor and it was not enacted.

/s/Richard W. Sabers
Justice Richard W. Sabers

### APPENDIX

House Joint Resolution 1004

BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE STATE OF SOUTH DAKOTA, THE SENATE CONCURRING THEREIN:

Section 1. That at the next general election held in the state, the following amendment to Article XIII of the Constitution of the state of South Dakota, as set forth in section 2 of this Resolution, which is hereby agreed to, shall be submitted to the electors of the state for approval.

Section 2. That Article XIII of the Constitution of the state of South Dakota be amended by adopting a new section to read as follows:

§ 20. The processing, refinement, manufacture, distribution and sale of agricultural products are hereby declared to be works of public necessity and importance in which the state may engage, and suitable laws may be enacted by the Legislature to empower the state to acquire, by purchase or appropriation, all *insert: or any portion of * * lands, easements, rights of way, tracks, structures, equipment, cars, motive power, implements, facilities, instrumentalities and material, incident or necessary to carry the provisions of this section into effect.

(This is an *unofficial* reprint of House Joint Resolution No. 1004.)