In the Matter of the CONSTRUCTION OF ARTICLE III, SECTION 5, OF THE SOUTH DAKOTA CONSTITUTION.

No. 17353.

Supreme Court of South Dakota.

Original Proceeding

Jan. 9, 1991.

TO HIS EXCELLENCY, GEORGE S. MICKELSON, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA.

You have asked the following question:

Whether, if any senatorial district is split into single-member house districts, all senatorial districts must be split into single-member house districts or whether a mixed system of single-member and dual-member house districts may coexist?

The question is prompted by a dispute among the members of the Redistricting Preparation Committee of the State Legislature as to the meaning of the following provision of S.D. Const. Art. III, § 5:

House districts shall be established wholly within senatorial districts and shall be either single-member or dual-member districts as the Legislature shall determine.

S.D. Const. Art. V, § 5 empowers the Governor to "require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions." "[T]his constitutional provision was never intended to be called into requisition unless some 'important question of law' was involved in the exercise of executive functions, or upon 'solemn occasions.'" *In re Construction of Constitution*, 3 S.D. 548, 551, 54 N.W. 650, 651–652 (1893).

It is not contended that this request is made pursuant to any contemplated executive action. The request relates to the duties of the legislature—not the executive. The Governor states in his request that the question arose from a dispute in a committee of the legislature. The Governor is not faced with the need to veto legislation whose legality is questioned, or to enforce any completed legislation. The Governor's power to require an advisory opinion from the Supreme Court "is confined exclusively to such questions as may raise a doubt in the executive department, —never in the legislative. Were we to construe it otherwise, it would be liable to become the medium of great abuse." *In re Construction*, 3 S.D. at 551, 54 N.W. at 652.

The basis on which the Governor requests this advisory opinion is that "the

reapportionment of house districts affects the entire political system of the state of South Dakota and, therefore, is a solemn occasion[.]" Although that appears to be the basis on which the Supreme Court answered the Governor's reapportionment questions in *In re Opinion of the Judges*, 61 S.D. 107, 246 N.W. 295 (1933), and in *In re State Census*, 6 S.D. 540, 62 N.W. 129 (1895), neither opinion was conclusive nor persuasive that it was compelled to do so. In both opinions, the question was whether redistricting was required or permitted in a given year. Since eventual redistricting was inevitable, and the Governor's request for an advisory opinion raised no question about the manner redistricting was to be accomplished, the court found that neither property nor individual rights were involved. Whether an advisory opinion affects individual rights is an important qualification on our capacity to issue opinions on solemn occasions.

Whenever we assume the right to answer such questions we must act, both as court and counsel, upon *ex parte* proceedings. It is a principle declared by our constitution ... that no person shall be deprived of life, liberty, or property, without due process of law. There can be no due process of law unless the party to be affected has his day in court. Yet a hasty construction and application of this provision might lead to the *ex parte* adjudication of private rights by means of an executive question, without giving the party interested a day or voice in court.

*In re Construction*, 3 S.D. at 551–552, 54 N.W. at 652.

Legislative reapportionment following a census may be more complicated than determining the year reapportionment should take place. More importantly, the manner of reapportionment may affect the individual voting rights of citizens and may become the subject for a cause of action under § 2 of the federal Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 (1988). *See Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). As such, it may be inappropriate for this court to attempt to adjudicate legal issues involved ex parte, particularly when they center on "future legislative action, the exact terms of which necessarily rest entirely in speculation and conjecture." *In re Opinion of the Judges*, 50 S.D. 324, 326, 210 N.W. 186, 187 (1926).

In our opinion, the key to our inquiry is the fact that the 1982 amendments to S.D. Const. Art. III, § 5 governing legislative apportionment eliminate any role of the Governor in the redistricting process, even if the legislature fails to act. We appreciate the legislature's need and the Governor's desire for sound legal advice on this question. However, as we said in *In re House Resolution No. 30*, 10 S.D. 249, 251, 72 N.W. 892 (1897), " '[t]he attorney general is the legal advisor of the executive department, and, except in rarest instances, this office should be consulted, and not the court' " (*citing In re Constitutionality of Senate Bill No. 65*, 12 Colo. 466, 21 P. 478, 480 (1889)). In addition, as stated in *Matter of Advisory Opinion*, 456 N.W.2d 546, 551 (1990), "[i]n effect, we would be giving an advisory opinion to the agriculture and business development finance authority, and such an opinion exceeds our authority." In effect here, we would be giving an advisory opinion to the Redistricting Preparation Committee of the legislature, and such an opinion exceeds our authority. *Id.*

We have reviewed all authorities * pertaining to the acceptance or declination of requests for advisory opinions, and conclude that we must respectfully decline to answer this request.

/s/   Robert A. Miller
Robert A. Miller, Chief Justice
/s/   Robert E. Morgan
Robert E. Morgan, Retired Justice

---

* Justice Wuest's writing states we have "clearly disregarded all precedent," that we "compound [our] mistake," and have "faulty and erroneous reasoning." His writing fails to point out *where, how* or *which* precedent is clearly disregarded. We submit "specifics" should replace some of the "conclusory" allegations in his writing so that we could more fully cooperate and yet not exceed our authority.

/s/ Frank E. Henderson
Frank E. Henderson, Justice

/s/ Richard W. Sabers
Richard W. Sabers, Justice

I would answer the Governor's request for an advisory opinion. In refusing to answer the Governor's request for an advisory opinion on reapportionment, the majority has clearly disregarded all precedent. *See In re State Census*, 6 S.D. 540, 62 N.W. 129 (1895) and *In re Opinion of the Judges*, 61 S.D. 107, 246 N.W. 295 (1933). To compound their mistake, they rely upon the 1982 amendments to S.D. Const. Art. III, § 5 which eliminated the Governor's role in reapportionment. They refer to this amendment as "the key to our inquiry." At the time of the 1896 and 1933 opinions, the Governor had no constitutional role in legislative reapportionment. It was only between 1936 and 1982 that the Governor had a constitutionally specified role to play in reapportionment. In other words, the constitution was amended in 1936 to provide the Governor with a specified role. In 1982 the constitution was amended again deleting his role therefrom. So the constitution, as it relates to the Governor, is now the same as it was when the two opinions were written. Therefore, the majority "key" is based upon faulty and erroneous reasoning.

Article V, Section 5 of the South Dakota Constitution provides:

> The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions.

The purpose of this provision is:

> [t]o grant the Governor "authority to call upon the Judges of the Supreme Court for their opinions on important legal questions which are *involved in the discharge of the duty of the Executive.*" (Emphasis added).

*Opinion of the Judges*, 246 N.W. at 295 (citing Constitutional Debates 1885, page 391). The very first line in Article IV, Section 3 of the South Dakota Constitution prescribing the powers and duties of the Governor provides: "[T]he Governor shall be responsible for the faithful execution of the law." The people must have considered this very important to place it in the first line of Article IV, Section 3. One of the laws of this state is Article III, Section 5 of the State Constitution providing for legislative reapportionment. The enabling legislation for this constitutional provision is found at SDCL 2-2-16 to 2-2-21, inclusive. SDCL 2-2-19 proscribes the legislative policy, one which is "(3) protection of minority voting rights pursuant to the Voting Rights Act of 1965."

Some may argue reapportionment is a legislative function in which the Governor has no input or control. That argument is fallacy. Under the Constitution he must enforce the law. Indeed, he has a further duty set out in Article IV, Section 3:

> "[T]he Governor shall at the beginning of each session, and may at other times, give the Legislature information concerning the affairs of the state and *recommend the measures he considers necessary.*"

In 1933, the Judges of this Court struggled with the issue of whether or not they should render an opinion to the Governor on reapportionment. The Supreme Court answered the Governor's request for an advisory opinion concerning legislative reapportionment in *Opinion of the Judges* and, there, found Article IV, Section 4 (duty of Governor to recommend to Legislature measures deemed expedient) supported the decision to advise the Governor. The then pertinent provision of Article IV, Section 4 has been substantially reenacted in Article IV, Section 3, which I have just quoted.

There is another reason why the Governor is entitled to the opinion. He must exercise the veto power as provided in Article IV, Section 4. If the Legislature passed an unlawful apportionment act, he would be obligated to enforce the law by veto. Some may argue that is a future act that may never occur. Perhaps, but I submit we should do like the Judges said in *Opinion of the Judges*, 246 N.W. at 295:

[W]e have taken into consideration the fact that it is your duty as chief executive, under section 4 of article 4 of the Constitution, to recommend to the Legislature such measures as you shall deem expedient, and we realize that you as chief executive would not wish to urge that the Legislature take action at this time concerning the matter of apportionment if they were forbidden so to do by the Constitution. We have also considered the fact that your inquiry raises a question strictly publici juris and involves no private rights, and the further point that your principal inquiry does not go generally to the constitutionality of any proposed legislation as dependent upon the form or contents of the legislation, but goes exclusively to the question of whether or not the Constitution expressly forbids the Legislature from acting at all with reference to certain subject matter at the present session.

There is yet another reason why we should answer the Governor's query. Cooperation between the equal branches of government; legislative, executive, and judiciary. Back in 1895 and 1933; *see In re State Census*, 62 N.W. 129 and *Opinion of the Judges, supra,* the Judges recognized the importance of cooperation. As they stated in *Opinion of the Judges*, 246 N.W. at 296:

> It is, we think, a time when the separate and co-ordinate branches of the government of this state, executive, legislative, and judicial should co-operate to the fullest extent possible for the public welfare.

Should the Governor recommend an unconstitutional reapportionment plan, and the Legislature enact it, it will ultimately be declared unconstitutional. Then what happens? A special session or must the Court reapportion the Legislature under the provisions of Article III, Section 5. I argue that, if we can cooperate with the Governor and Legislature to prevent the enactment of unconstitutional law, we should do it like our predecessors did in 1933.

We are not writing an opinion which violates the private rights of individuals or concerns hypothetical legislation. We are not requested to pass generally upon the constitutionality and validity of a pending legislative act. Rather, we are requested to construe a constitutional provision in regard to a present fact: whether Article III, Section 5 contemplates a mixed system of single-member and dual-member house districts. Our opinion on this question would not "rubber stamp" as constitutional reapportionment legislation, the form and content of which are unknown, but would assist the Governor in recommending to the Legislature a reapportionment scheme which protects the constitutional voting rights of everybody, especially minorities.

Legislative reapportionment clearly concerns public rights and is, indeed, fundamental to our democratic form of government. We should answer the Governor's request.

/s/   George W. Wuest
George W. Wuest, Justice