## In re CONSTRUCTION OF CONSTITUTION.

Const. art. 5, § 13, providing that "The governor shall have authority to require the opinion of the judges of the supreme court upon important questions of law involved in the exercise of his executive powers, and upon solemn occasions," is confined exclusively to such questions as may raise a doubt in the executive department,—never in the legislative,—and therefore the court will not, on application by the governor, made at the request of both houses of the legislature, construe a

section of the constitution which declares the number of votes that shall be necessary for the passage of a law, in anticipation of certain rulings under such section by the presiding officers of the legislature; the question involved being one of purely parliamentary procedure.

(Syllabus by the Court.  Opinion filed Feb. 23, 1893.)

The opinion of the judges of the supreme court on a question involving the construction of Const. art. 3, § 18, was requested by the governor, to which request the following response was made:

Supreme Court Chambers,
Pierre, S. D., February 23, 1893.

His Excellency, C. H. Sheldon, Governor of South Dakota:

Sir:  We are in receipt of your communication of the 21st inst., inclosing a joint resolution of the senate and house of representatives, requesting that you submit for our opinion the meaning and intent of section 18 of article 3 of the constitution of this state.  With great respect, both to yourself and the honorable bodies which passed the resolution, we have the honor to make the following reply:

The joint resolution is as follows:  "Be it resolved by the senate, the house concurring:  whereas, section 18, art. 3, of the constitution of the state of South Dakota, provides that no law shall be passed unless by assent of a majority of all the members elected to each house of the legislature, and the question upon the final passage shall be taken upon its last reading, and the yeas and nays shall be entered upon the journal; and whereas, the lieutenant governor, as the president of the senate, on the 4th day of February, 1893, held that, on concurrence in house amendments to senate bill, it required an affirmative vote of a majority of all the senators elected, and that the vote must be taken by yeas and nays, and duly entered upon the journal; and whereas, the said question of parliamentary procedure is a question of the most far-reaching consequences,—therefore, resolved, that his excellency, the governor, be requested to obtain the opinion of the supreme court of the state upon said constitutional provision."

The framers of the constitution divided the powers of the state government into three distinct departments, the legislative, ex-

ecutive, and judicial. The powers and duties of each are specifically prescribed. Sections 2, 3, art. 5, specify the jurisdiction to be exercised by this court. They declare that, with certain designated exceptions, this jurisdiction shall be purely appellate and supervisory. A few writs and proceedings are named in which this court is clothed with original jurisdiction. The resolution before us, and the request from your excellency, purport to have been framed under the prescribed authority conferred by section 13, art. 5 of the constitution, which reads as follows: "The governor shall have authority to require the opinion of the judges of the supreme court upon important questions of law involved in the exercise of his executive powers, and upon solemn occasions." This section of the constitution is an enlargement of the usual jurisdiction and duties of the judges of this court. It adds a unique and important proceeding. It is unique because devoid of nearly all the usual indicia of judicial proceedings, and is important because of its consequences. There are, we believe, but few states of the entire Union which have ventured to adopt and retain constitutional provisions in any way analogous to these. At one time there existed in Missouri a somewhat similar provision, but the framers of the Missouri constitution of 1875, profiting, we suppose, by experience, excluded it from that constitution, and no effort has been made looking to its restoration. Colorado, however, has gone farther than any of the other states referred to. The express words of its constitution are "that the supreme court shall give its opinion upon important questions, upon solemn occasions, when required by the governor, senate, or the house of representatives." By this provision that court appears to be the legal adviser of the governor, senate, and house of representatives,—occupying much the same relation in this regard as does an attorney general. Yet under this extended provision the supreme court of that state has held that the section applies only to cases where questions of public right are involved, and that even then questions of this character should rarely be thus presented or considered. See Wheeler v. Irrigation Co., 9 Colo. 248, 11 Pac. Rep. 103; *In re* Constitutionality of Senate Bill No. 65, (relating to district attorneys,) 12 Colo.

466, 21 Pac. Rep. 478.    The court, in the last mentioned case, says: "While the question must be one relating to purely public rights, it can only be propounded upon solemn occasions; and it must possess a peculiar or inherent importance, not belonging to all questions of the kind.   It is impossible to state any absolute rule by which the sufficiency of this importance, and the degree of this solemnity, can be determined.   These are matters that rest largely in the discretion of both legislature and court; for, while the legislature is first to judge of the relative importance and solemnity justifying a given question, it has been held that the justices have also a voice in deciding whether jurisdiction should be entertained.   See Opinion of Justices, 49 Mo. 216.   The court will seldom question the action of the legislature in this respect, but the right to do so should not be denied.   It is submitted, however, that for good reasons the greatest caution should be employed, both by the legislature and court, in exercising the discretion just mentioned."

In our opinion, this constitutional provision was never intended to be called into requisition unless some "important question of law" was involved in the exercise of executive functions, or upon "solemn occasions."   It is confined exclusively to such questions as may raise a doubt in the executive department,— never in the legislative.   Were we to construe it otherwise, it would be liable to become the medium of great abuse.   It certainly could not have been intended to authorize an *ex parte* adjudication of important questions of law by means of executive questions, nor could the purpose have been to exact a response for an exposition of a constitutional provision relating to a given general subject in anticipation of certain rulings of the presiding officers of the senate or house of representatives, upon purely parliamentary law.

It may not be improper for us to further suggest that a satisfactory response to the resolution would require vast research, and extraordinary caution.   Whenever we assume the right to answer such questions we must act, both as court and counsel, upon *ex parte* proceedings.   It is a principle declared by our constitution, (section 2, art. 6,) and of universal recognition, that

no person shall be deprived of life, liberty, or property without due process of law. There can be no due process of law unless the party to be affected has his day in court. Yet a hasty construction and application of this provision might lead to the *ex parte* adjudication of private rights by means of an executive question, without giving the party interested a day or voice in court.

Again, it could not have been the intention of the constitution makers to permit the presentation of questions as to whether a bill has been passed by the legislature by the requisite number of votes or not. This question, primarily, must be left to the judgment of that department of our government, and their judgment must be final until it shall be called in question through the usual avenue provided for testing it. A proper regard for the constitutional arrangement of the different departments of government and the constitutional powers and duties devolving upon each department, forbids the conclusion that this court should have anything to do with such matters. It is not our duty to give advice upon any question relating to fact or policy. It is the exclusive province of the legislature to judge of the necessity or desirability of each qoestion or act performed.

The question propounded by the joint resolution under consideration calls for the construction of an important section of the constitution, relating purely to legislative duty and requirement. Any answer to the question would necessarily affect vast property interests, and profound questions of public policy. There may be now, in this and other courts of the state, actions through which some of these matters are in process of adjudication. To anticipate such cases, and pass in this summary manner upon the right involved, without the parties before us, and without the aid of counsel, is something we should not be asked to do, except upon the gravest and most urgent necessity.

For the reasons above expressed, and many others which might with propriety be urged, and which will readily occur to your excellency and the honorable senate and house of representatives, we must, with due respect, decline to answer the questions propounded by the joint resolution. Yet, in doing so, we

desire to assure your excellency, and the senate and house of representatives, that we shall always cordially co-operate with you in the separate duties belonging to your departments, so far as such co-operation may be proper and just, under the constitution and laws of the state.

Respectfully, your obedient servants,

JOHN E. BENNETT,
DIGHTON CORSON,
A. G. KELLAM,

Judges of the Supreme Court, State of South Dakota.