## *In re* HOUSE RESOLUTION No. 30.

An opinion as to the constitutionality of House Joint Resolution, Laws 1897, Chap. 83, cannot be given under Const. Art. 5, § 13, which gives the governor power "to require the opinion of the judges of the supreme court upon important questions of law involved in the exercise of his executive powers, and upon solemn occasions," since said resolution involves the personal right of certain parties to hold commissioned offices, and to be paid for services already rendered.

(Opinion filed Oct. 19, 1897.)

The opinion of the judges of the supreme court on the constitutionality of House Joint Resolution No. 30, was requested by the governor, to which request the following response was made:

Supreme Court Chambers.

Pierre, October 19, 1897.

To His Excellency, Andrew E. Lee, Governor of the State of South Dakota.

Sir:—We have the honor to acknowledge the receipt of your communication of the 12th instant, requesting an opinion

as to the constitutionality of House Joint Resolution No. 30, and by which we are advised: "A commission was duly appointed under the provisions of this joint resolution, and proceeded with its work. Certain public officials, among whom was the present auditor of state, refused to recognize the validity of the law creating the commission. Acting upon this view of the case, Mr. Mayhew declined to allow the pay of the commissioners. The attorney general was appealed to by the auditor, and it is understood he rendered an opinion sustaining Mr. Mayhew's action, and declaring House Joint Resolution No. 30, and the appropriation therefor, to be void."

The questions propounded for our consideration are: "First. Was House Joint Resolution No. 30 constitutionally adopted?—Second. Was the appropriation to carry into force House Joint Resolution No. 30 constitutionally enacted?"

Sec. 13, Art. 5, of the constitution invests the governor with power "to require the opinion of the judges of the supreme court upon important questions of law involved in the exercise of his executive powers and upon solemn occasions." By this unusual provision the framers of the constitution only intended to enable a co-ordinate branch of the government, upon solemn occasions, calling for the exercise of important executive powers, to obtain from the judges *ex parte* legal opinions having the force and effect of judicial precedents; and, when such opinions must manifestly trench upon and invade equally important constitutional provisions guarantying to all the benefits of "due process of law," without which none can be deprived of substantial rights, judges are limited with reference to persons and subject-matter to the ordinary course of judicial proceedings. From the communication before us it appears that his excellency, the governor, in the exercise of the power sought to be conferred by House Joint Resolution No. 30, duly appointed a commission of three persons, who promptly entered upon and have performed official services, in compensation for which claims have been presented to and re-

jected by the state auditor in accordance with an opinion rendered by the attorney general of the state declaring "House Joint Resolution No. 30, and the appropriation therefor, to be void." "The attorney general is the legal adviser of the executive department, and, except in rarest instances, this office should be consulted and not the court. To avoid grave injustice and abuse, the most extraordinary caution and conservatism should be exercised in propounding and in answering such questions, and the same must relate to matters exclusively *juris publici*." *In re* Constitutionality of Senate Bill No. 65, 12 Colo. 466, 21 Pac. 478. In declining to render an opinion in response to a similar request made by his excellency, Charles H. Sheldon, as governor of this state, the judges said: "There can be no due process of law unless the party to be effected has his day in court. Yet a hasty construction and application of this provision might lead to the *ex parte* adjudication of private rights by means of an executive question, without giving the party interested a day or voice in court." *In re* Construction of Constitution, 3 S. D. 548, 54 N. W. 650. And again, *In re* Chapter 6, Session Laws 1890, 8 S. D. 274, 66 N. W. 310: "It is a fundamental principle of our political system, recognized and respected by all thoughtful citizens, that, so far as possible, each department of government should act independently of the others. Unless carefully guarded, the section of the constitution in question may lead to frequent discussions of delicate distinctions between executive and judicial duties. We believe the operation of its provisions should never be extended beyond the manifest intent of its terms. Its language should be given a restricted, rather than an enlarged, interpretation. Only upon important questions of law and upon solemn occasions should the *ex parte* opinion of the judges be required. * * * These are matters which must rest largely in the discretion of both the executive and the judiciary; for, while the executive will have to first judge whether any given question justifies a request for the opinion of the judges, upon

the latter must devolve the responsibility of deciding whether it is one upon which the constitution contemplates an opinion should be given. It is submitted, however, that, for many excellent reasons, great caution should be employed both by the executive and the judges in exercising the discretion conferred upon each. It is evident that a construction of the statute to which our attention is called would substantially affect the rights of persons now acting as regents of education. To determine such rights in advance of any contention on their part, and without such persons having an opportunity to be heard, seems to us exceedingly undesirable, and not in accord with the methods usually employed in judicial proceedings."

The legal effect of an answer to the questions here propounded not only involves the validity of the resolution presented, and an appropriation of $6,000 to carry the same into operation, but requires us to determine, without a day in court, or the aid of counsel, the rights of commissioned officers to hold important appointive public positions, and receive compensation for services already rendered. The judges of this court having thus uniformly declined to render *ex parte* opinions affecting the substantial rights of persons, and the matter now presented being one for which a plain, speedy, and adequate remedy has been provided within the ordinary scope of judicial investigation, a sense of duty and our former decisions impel us to refrain from the expression of an *ex parte* and manifestly far-reaching opinion concerning the constitutionality of House Joint Resolution No. 30 and the appropriation to carry the same into effect.

We have the honor to be, most respectfully,

DIGHTON CORSON,
H. G. FULLER,
D. HANEY,

Judges of the Supreme Court, State of South Dakota.