# APPENDIX

## In re OPINION OF THE JUDGES

### (147 N. W. 729.)

1. Executive Office—Courts—Supreme Court—Advisory Opinion to Governor—Constitutional Law—"Solemn Occasion"—Loss of Revenue.

Only the gravest and most urgent necessity will justify the Judges of the Supreme Court in rendering an ex parte opinion, where private rights are involved, in response to a question by the Governor under Const. Art. 5, Sec. 13; and loss of expected revenue from taxation of two express companies, involved in ltiigation in the federal court, does not present a "solemn occasion" within the meaning of said section, upon which the Governor may require their opinion.

2. Courts—Supreme Court—Constitutional Law—Advisory Opinion to Governor—Not Court Decision—Binding Effect.

The opinion of the Judges of the Supreme Court, which, under Const., Art. 5, Sec. 13, the Governor may require, does not amount to a decision of that Court, but is merely an advisory opinion of the Judges, and is not conclusive upon rights of parties, nor binding upon any one.

3. Courts—Supreme Court—Constitutional Law—Advisory Opinion to Governor—Effect of, on Federal Courts.

The rule of duty of federal courts to follow the decisions of the Supreme Court of a state in matters pertaining to construction of the state Constitution, does not apply to an advisory opinion of the Judges of such state Court to the Governor of the state, which does not have the force of a judicial decision.

(Opinion of Judges filed June 10, 1914.)

In the matter of a request for an opinion of the Judges of the Supreme Court, made by the Governor of the State of South Dakota. Request denied.

*To His Excellency, Frank M. Byrne, Governor of the State of South Dakota:*

Sir:

On May 12, 1914, you presented to the judges of the Supreme Court, the following communication:

"To The Honorable The Supreme Court of the State of South Dakota, and to the Judges thereof:    I desire to call your attention to the fact that chapter 64 of the Session Laws of 1907 of the state of South Dakota, being an act providing for the assessment of the property of railway, telegraph, telephone, express and sleeping car companies, has been declared invalid as being repugnant to the constitution of the state of South Dakota, and particularly to Section 17 of Article Six thereof, and Section Two of Article Eleven, by a decision of the United States Circuit Court of Appeals of the Eighth Circuit, opinion by Judge Sanborn, entered at St. Louis, on May 4th, 1914, in certain litigatoin between the state of South Dakota and the American and Wells-Fargo Express Companies.

"Section 13 of Article 5 of the Constitution authorizes the governor to require the opinion of the judges of the Supreme Court of this state, upon important questions of law involved in the exercise of his executive powers, and upon solemn occasions, and after reading the different opinions of your honorable court, construing the section of the constitution above referred to, and a letter of Royal C. Johnson, Attorney General of South Dakota, transmitted to me on May 11th, 1914, a copy of which is annexed hereto and made a part hereof, I am convinced that it is my duty as governor of this state, to request of your honorable court its opinion as to whether or not the statute referred to is in violation and repugnant to the constitution of the state of South Dakota, and I hereby make application to you to render a decision deciding such question.

"It appears to the legal department of the state, and myself, that the Supreme Court of this state is the final arbiter of this important question, and that this is the only method whereby the matter can be presented to you. If this statute is invalid, it may be necessary to call a special session of the legislature of this state, and in any event, the very life of the state is involved, as it cannot exist without the revenue derived from taxation.

"The specific question upon which your opinion is required, is:    Were sections 16 to 23 inclusive, of chapter 64, Laws of 1907, valid when enacted, and not repugnant to the provisions of the constitution cited by the Attorney General?    If not, are

they valid now by virtue of the 1912 amendment to Section 2 of Article 11 of the State Constitution, and chapter 347, Laws of 1913?

"The Attorney General assures me of his desire, if in your opinion it is desirable or necessary, to file copies of the briefs both of the state and of the Express Companies which were before the Court of Appeals in these cases, and also to appear together with the counsel for those companies, if they should desire to be heard, and submit arguments and additional briefs as the court may direct.

"Copy of the communication addressed to me by the Attorney General is annexed hereto and made a part hereof.

"Respectfully submitted,

FRANK M. BYRNE,

"Governor of the State of South Dakota."

On May 22, 1914, the judges made the following reply:

"To His Excellency, Frank M. Byrne, Governor of the State of South Dakota: Sir: We have given careful consideration to your request of May 12, 1914, for an opinion on these two questions, viz:

"'Were sections 16 to 23 inclusive, of chapter 64, Laws of 1907 valid when enacted and not repugnant to the provisions of the constitution?

"'If not, are they valid now by virtue of the 1912 amendment to section 2 of Article XI. of the State Constitution and chapter 347, Laws of 1913.'

"We are firmly convinced of two things. First: that under the former opinions of the. Judges of this court given in response to similar requests made upon the authority of section 13 of Article 5 of the Constitution, and under the opinions of the Judges of other courts under like circumstances, we must respectfully decline to answer the questions propounded: Second; that if such questions were answered by us the answer would not amount to a decision of this court but would merely be an advisory opinion of the Judges, not conclusive upon the rights of parties and binding on no one. Hence it would not accomplish the avowed purpose of the questions as disclosed by your valued communication.

"We will as soon as possible prepare and submit to your

Excellency a formal opinion embodying the reasons that compel us to decline to comply with your request. Respectfully yours."

Pursuant thereto, we now give our reasons for declining to answer the questons.

[1] Section 13, Article V. of the Constitution reads as follows:

"§13. The Governor shall have authority to require the opinions of the judges of the Supreme Court upon important questions of law involved in the exercise of his executive powers and upon solemn occasions."

There are therefore two classes of cases when the request for an opinion is authorized; first: When an important question of law is involved in the exercise of the executive powers; second: Upon solemn occasions. It is manifest from your communication and from the letter of the Attorney General, which is by reference made a part thereof, that the questions asked are not involved in the exercise of the executive powers. Is this, then, a "solemn occasion?"

Since the adoption of our Constitution there have been eleven requests made by the Governor for the opinion of the Judges. Eight of these requests were answered, the opinions appearing in 2 S. D. 58, 48 N. W. 813; 2 S. D. 71, 48 N. W. 812; 3 S. D. 456, 54 N. W. 417; 4 S. D. 532, 57 N. W. 495; 6 S. D. 518, 62 N. W. 101, 55 Am. St. Rep. 852; 6 S. D. 540, 62 N. W. 129; 7 S. D. 42, 63 N. W. 223, and 13 S. D. 191, 83 N. W. 96. Three of the reqquests were not complied with, as appears in 3 S. D. 548, 54 N. W. 650, 19 L. R. A. 575; 8 S. D. 274, 66 N. W. 310, and 10 S. D. 249, 72 N. W. 892.

In the opinion reported in 3 S. D. 548, 54 N. W. 650, 19 L. R. A. 575, the judges of this court declined to answer a parliamentary question involving the interpretation of a constitutional provision, the question being submitted by the legislature through the Governor. In that opinion it was stated:

"It is a principle declared by our Constitution, (sec. 2, art. 6), and of universal recognition, that no person shall be deprived of life, liberty, or property without due process of law. There can be no due process of law unless the party to be affected has his day in court. Yet a hasty construction and application of this provision might lead to the *ex parte* adjudica-

tion of private rights by means of an executive question, without giving the party interested a day or voice in court. * * *

"The question propounded . by the joint resolution under consideration calls for the construction of an important section of the constitution, relating purely to legislative duty and requirement.    Any answer to the question would necessarily affest vast property interests, and profound questions of public policy.    There may be now, in this and other courts of the state, actions through which some of these matters are in process of adjudication.    To anticipate such cases, and pass in this summary manner upon the right involved, without the parties before us, and without the aid of counsel, is something we should not be asked to do, except upon the gravest and most urgent necessity."

In the opinion reported in 8 S. D. 374, 66 N. W. 310, the Judges declined to answer the question, basing their refusal upon the ground that it would substantially affect the rights of persons then acting as Regents of Education and said:

"To determine such rights in advance of any contention on their part and without such persons having an opportunity to be heard, seems to us exceedingly undesirable and not in accord with the methods usually employed in judicial proceedings."

In the opinion reported in 10 S. D. 249, 72 N. W. 892, the Judges declined to answer questions as to whether a legislative resolution for a Commission was lawfully enacted and whether there was an appropriation to carry it into effect. The opinion was declined upon the same grounds as last set forth and the judges quoting from their former opinion said:

"Unless carefully guarded the section of the Constitution in question may lead to frequent discussions of delicate distinctions between executive and judicial duties.    We believe the operation of its provisions should never be extended beyond the manifest intent of its terms.    Its language should be given a restricted rather than an enlarged interpretation."

It thus seems to be the settled rule of this jurisdiction that only the gravest and most urgent necessity will justify us in rendering an *ex parte* opinion where private rights are involved. The Judges of the highest courts of other states have taken the same view.    Answer of the Justices, 148 Mass. 623; Answer of

.the Justices, 122 Mass. 600; In re Interrogatories of the Senate, .54 Colo. 166, 129 Pac. 811; Opinion of the Court, 62 N. H. 704 Opinion of the Court, 55 Mo. 497; In re Advisory Opinion to ·Governor, 50 Fla. 169, 39 South. 187; Reply of the Judges, 33 ·Conn. 586; 8 Cyc. 847.

While the loss of the expected revenue from the taxation ·of the two express companies, involved in the litigation in the federal court, may be a serious one we are of the opinion that it is not so vital as to authorize us to give an *ex parte* answer to the questions submitted and that therefore the present occasion is not a "solemn" one within the meaning of the above provision of the Constitution.

[2] Again, as stated in our letter, if the questions were answered the answer would not amount to a decision of the Supreme Court of this state, but would merely be an advisory opinion of the Judges not conclusive upon the rights of parties and binding on no one. Opinion of the Justices, 126 Mass. 557, 566 ;In re Opinion of the Justices, 214 Mass. 602, 102 N. E. 644; In re Opinion of the Judges, 25 Okl. 76, 105 Pac. 325; Reply of the Judges, 33 ·Conn. 586.

[3] The disclosed purpose of the questions is based upon the ·suggestion of the Attorney General that the opinion of the Judges might be at variance with the recent opinion of Mr. Justice Sanborn in the Express Company case and that therefore upon a petition for rehearing or upon a review by the Supreme ·Court of the United States, the federal courts would be obligated to follow the opinion of the Judges of this court. It is clear to us that the duty of the federal courts to follow the decision of a state court in matters pertaining to the construction of a state constitution does not comprehend advisory opinions of Judges which do not have the force of judicial decisions. An ·opinion in this case if given by us would have no more binding ·effect upon the federal courts than the opinion of any five South Dakota lawyers of repute.

The situation is entirely different from the Ohio situation cited by the Attorney General and involved in the following ·cases: Western Union Telegraph Co. v. Poe (C. C.) 64 Fed. 9; State ex rel., etc., v. Jones, 51 Ohio St. 492 37 N. E. 945; Sanford v. Poe, 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641, and

Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup-Ct. 305, 41 L. Ed. 683. There a decision by the Ohio Supreme Court intervened between the time of the decision of the United States Circuit court and the later decisions in the Circuit Court of Appeals and the United States Supreme Court. It was there claimed by the Express Company that such decision by the state court was the result of a friendly suit. Both the Court of Appeals and the United States Supreme Court held that the question as to whether or not the suit was a friendly one was for the state court to determine and that the determination of the state court was binding upon them.

The distinction between the binding effect of a decision of the Supreme Court of South Dakota and an advisory opinion of the Judges is obvious.

Respectfully yours,<br>
(Signed:)

SAMUEL C. POLLEY,
CHAS. S. WHITING,
J. H. McCOY,
E. G. SMITH,
J. H. GATES,

Judges of the Supreme Court of the State of South Dakota.