In re Request of Governor William J. JANKLOW for An Advisory Opinion Concerning the Constitutionality of House Bill 1163, Seventieth Session, South Dakota Legislative Assembly, 1995.

No. 19106.

Supreme Court of South Dakota.

March 17, 1995.

TO HIS EXCELLENCY, WILLIAM J. JANKLOW, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA.

Pursuant to the authority vested in the Governor under Article V, § 5 of the South Dakota Constitution, you have requested an opinion of the Supreme Court on an important question of law concerning House Bill 1163 (attached) which involves the exercise of your executive power or a solemn occasion. The factual basis of your request is:

That on March 1, 1995, the South Dakota State Senate passed House Bill 1163 by

a vote of 19—16, and on March 3, 1995, House Bill 1163 passed the South Dakota House of Representatives by a vote of 38—31. I have the bill on my desk, unsigned. A copy of House Bill 1163 as passed by the South Dakota Legislature is attached to this request for the Court's review.

House Bill 1163 does the following:

1. Delays the effective date of House Bill 1350, the four percent medical provider tax, from July 1, 1995, to August 1, 1995;

2. Establishes a special election to be held on July 11, 1995;

3. Proposes to the voters of the State of South Dakota the option of a one-half cent increase in various sales and services, use and excise taxes under SDCL chapters 10–45, 10–46, and 10–58, as an alternative to the four percent medical provider tax. If the sales tax increase alternative is consented to and adopted by the people, the provider tax is simultaneously repealed.

The revenues generated from the medical provider tax or the one-half cent increases in the state sales and service, use and excise tax rates will be deposited in the state general fund and utilized for the operation of state government including state aid to education and property tax relief.

Since House Bill 1163 was passed by both houses of the Legislature and sent to me for approval or veto, I am deeply concerned that the contemplated action be proper and constitutional. Court declarations declaring all or a portion of House Bill 1163 unconstitutional or contrary to state law either prior to or following the vote of the electorate would have enormous impact on the operation of state government, devastating economic consequences, and legislative changes in the funding for public schools, funding for special education and the legislation limiting the growth of local government will be placed in jeopardy and be unworkable. Given the legal questions that are raised and the substantial consequences of adverse court rulings in the future, I am hereby requesting your opinion as to the constitutionality and legality of House Bill 1163. Specifical-ly, I am requesting the Court to issue an advisory opinion on the following question of law interpreting the State Constitution:

If the election called for by House Bill 1163 results in a yes vote by the people of South Dakota, will the sales tax increase enacted by the people at the July 11, 1995, election be a constitutionally valid enactment by the people?

In other words, may the South Dakota Legislature by a majority vote, under its inherent powers under S.D. Const. Art. III, § 1 as interpreted by this Court in *State ex rel. Wagner v. Summers* [33 S.D. 40], 144 N.W. 730 (S.D.1913), and *Wyatt v. Kundert,* 375 N.W.2d 186 (S.D. 1985), propose a measure to be voted upon by the people of the State of South Dakota which would have the effect of increasing the various state sales, use and excise tax rates by one-half cent?

Article V, § 5 of the South Dakota Constitution provides, in pertinent part, "The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions." *See In re Construction of Constitution,* 3 S.D. 548, 551, 54 N.W. 650, 651–52 (1893). Because the question posed here does not involve the discharge of the duty of the executive, we may render this advisory opinion only if the circumstances constitute a "solemn occasion."

In his special concurrence in *Poppen v. Walker,* 520 N.W.2d 238, 250 (S.D.1994), Chief Justice Miller summarized the prominent cases in which this Court has rendered advisory opinions:

Historically, we have given advisory opinions on significant state issues. In 1990, we advised Governor Mickelson on the extent of his authority to make financial commitments concerning the state's involvement in a corn wet-milling plant. *In re Request for an Advisory Opinion,* 456 N.W.2d 546 (S.D.1990). We advised Governor Janklow concerning his authority to appoint members of a public authority to issue revenue bonds to finance agricultural loans and business enterprises. *In re Request for an Advisory Opinion,* 387 N.W.2d 239 (S.D.1986). We also rendered

an opinion to Governor Janklow concerning the interpretation of statutes following cancellation of the state's liability insurance policy. *In re Request for Opinion of the Supreme Court,* 379 N.W.2d 822 (S.D. 1985). Governor Kneip obtained an opinion regarding the constitutionality of an act authorizing a bridge authority to issue revenue bonds. *In re Opinion of the Supreme Court,* 257 N.W.2d 442 (S.D.1977). We gave an opinion to Governor Boe pertaining to the constitutionality of legislation for tax relief. *In re Opinion of the Judges,* 81 S.D. 629, 140 N.W.2d 34 (1966). Further, Chief Justice Miller's concurrence implied that circumstances which have a significant statewide impact on the welfare of the citizens of the state, especially those with the potential for a devastating economic impact, constitute a solemn occasion in which we should give an advisory opinion. 520 N.W.2d at 250.

■ Guidance in determining whether this request presents a solemn occasion is also provided by a review of those cases in which we have been called upon to issue advisory opinions. These cases reveal eight factors involved in determining if a solemn occasion exists:

1. whether an important question of law is presented; *Construction of Constitution,* 3 S.D. 548, 54 N.W. 650;

2. whether the question presents issues which are pending before the Court; In re Constitutionality of Proposed South Dakota Video Lottery Amendment, # 18830 (letter of Miller, C.J., declining request as two petitions for rehearing were pending in the underlying case); In re Constitutionality of South Dakota Video Lottery, # 18806 (same—one petition pending);

3. whether the matter involves private rights or issues of general application; *Opinion of the Judges,* 81 S.D. 629, 140 N.W.2d 34;

4. whether alternative remedies exist; *In re Request for Opinion of Supreme Court,* 321 N.W.2d 101 (S.D.1982); *In re Opinion of the Supreme Court,* 87 S.D. 399, 209 N.W.2d 668 (S.D.1973); In re Request of the Governor for an Advisory Opinion Concerning the Constitutional Effect of Pending Referendum upon 1985 House Bill 1366, # 15122 (order vacating order granting request for advisory opinion issued when circuit court action was amended to include issues upon which advisory opinion had been requested);

5. whether the facts and question are final, or ripe, for an advisory opinion; *In re Construction of Article III, § 5, of the South Dakota Constitution,* 464 N.W.2d 825 (S.D.1991); *Opinion of the Judges,* 81 S.D. 629, 140 N.W.2d 34;

6. the urgency of the question; *Request for Opinion of Supreme Court,* 379 N.W.2d 822;

7. whether the issue will have a significant impact on state government or the public in general; *Poppen,* 520 N.W.2d at 250; and

8. whether the Court has been provided an adequate amount of time to consider the question; *Constitutionality of South Dakota Video Lottery.*

■ In applying these factors, we note that the question presented here involves compliance with our state constitution. Generally, we consider constitutional issues to be important questions of law. The issue is not currently pending before this or any other court of the state, and poses a general question which would not constitute an adjudication of private rights. An alternative remedy does exist here, however, as a private individual could bring suit to enjoin the election pending a circuit court ruling on the constitutionality of the entire election proposal.

In the past, we have answered questions regarding the constitutionality of legislation before the Governor for his approval or disapproval, and did not reject such a request on the basis that the matter was not final. *Opinion of the Judges,* 81 S.D. 629, 140 N.W.2d 34. It is also accepted that this matter has a degree of urgency not only because the election is scheduled to occur in less than four months, and the legislature will return in a matter of days for its final day of the 1995 legislative session, but also because our advice at this time will permit

the Governor the opportunity to veto a bill which may be constitutionally infirm. There also seems to be little doubt that the issues of property tax relief, and the method by which the state proposes to tax its citizens, have a significant impact on both state government and the population in general.

The weight of the foregoing factors supports the rendering of an advisory opinion and we hereby honor your request.

You have asked:

If the election called for by House Bill 1163 results in a yes vote by the people of South Dakota, will the sales tax increase enacted by the people at the July 11, 1995, election be a constitutionally valid enactment by the people?

In other words, may the South Dakota Legislature by a majority vote, under its inherent powers under S.D. Const. Art. III, § 1 as interpreted by this Court in *State ex rel. Wagner v. Summers* [33 S.D. 40], 144 N.W. 730 (S.D.1913), and *Wyatt v. Kundert,* 375 N.W.2d 186 (S.D.1985), propose a measure to be voted upon by the people of the State of South Dakota which would have the effect of increasing the various state sales, use and excise tax rates by one-half cent?

For the reasons set forth below, the answer to both questions is no.

In 1978, the people approved a constitutional amendment strictly limiting the method by which certain tax rates can be increased in South Dakota. The amendment (S.D. Const. art. XI, § 13) finds its origin in House Joint Resolution 501, introduced during the 1977 legislative session. This resolution proposed and submitted to the electors, at the next general election, an amendment to Article XI of the South Dakota Constitution specifically relating to taxation. Despite some amendments, the original resolution did not differ in any significant degree from the current language of art. XI, § 13 insofar as its delineation of the two methods by which the rate of taxation may be increased. The 1977 resolution was approved at the general election conducted on November 7, 1978. The vote was 116,647 for and 103,621 against. As a result, what is now S.D. Const. art. XI, § 13 came into being.

S.D. Const. art XI, § 13 permits only two methods by which the rate of taxation on personal or corporate income or on sales or services can be increased:

The rate of taxation imposed by the state of South Dakota on personal or corporate income or on sales or services, or the allowable levies or the percentage basis for determining valuation as fixed by law for purposes of taxation on real or personal property, shall not be increased unless by consent of the people by exercise of their right of initiative or by two-thirds vote of all the members elect of each branch of the Legislature.

S.D. Const. art. XI, § 13.

 In the absence of ambiguity, the language in the constitution must be applied as it reads. *Levasseur v. Wheeldon,* 79 S.D. 442, 112 N.W.2d 894 (1962). Here, the language utilized in S.D. Const. art. XI, § 13 is clear, certain and unambiguous and our obligation is to apply its plain meaning. To increase the rate of income, sales or service taxes a) the people must exercise their right of initiative, or b) each branch of the legislature must pass the increase by a two-thirds vote. While the letter accompanying the request for this opinion suggests, as an alternative interpretation, that the legislature's referral of House Bill 1163 to a public vote fulfills the initiative requirements of S.D. Const. art. XI, § 13, we disagree. The constitutional provision itself distinguishes between the method by which the legislature may increase certain tax rates and the people's ability to increase tax rates by "exercise of *their* right of initiative." S.D. Const. art. XI, § 13 (emphasis added). Moreover, under settled law an "[i]nitiative is the constitutional reservation of power in the people to propose bills and laws and to enact or reject them at the polls *independent of the legislative assembly.*" *Byre v. City of Chamberlain,* 362 N.W.2d 69, 79 (S.D.1985) (emphasis added). The legislature's referral of a tax rate increase for a public vote simply cannot constitute an initiative of the rate increase "independent of the legislative assembly." Thus, in this case, the people did not initiate House Bill 1163. In addition, House Bill

1163 passed each branch of the legislature by merely a majority vote, not a two-thirds vote. Consequently, House Bill 1163 does not meet the dictates of S.D. Const. art XI, § 13.

■ The legislature has the inherent authority to refer its own acts. *Wyatt v. Kundert*, 375 N.W.2d 186 (S.D.1985). However, art. XI, § 13 of the South Dakota Constitution, which specifies the two exclusive methods by which the rate of taxation can be increased, is a strict limitation on the legislature's inherent authority to refer its acts increasing the rate of taxation. Based on this strict limitation, it is our opinion that those portions of House Bill 1163 which would result in a tax rate increase if approved by a vote of the electorate would be unconstitutional.

Respectfully submitted this 17th day of March, 1995.

/s/Robert A. Miller
CHIEF JUSTICE ROBERT A. MILLER

/s/Richard W. Sabers
JUSTICE RICHARD W. SABERS

/s/Robert A. Amundson
JUSTICE ROBERT A. AMUNDSON

/s/John K. Konenkamp
JUSTICE JOHN K. KONENKAMP

ATTACHMENT

AN ACT

ENTITLED, An Act to provide for a special election to provide a sales tax increase as an alternative to the medical services provider tax for property tax relief.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA:

Section 1. There shall be a special election held in this state on July 11, 1995. Any political subdivision of this state may combine any special election of such subdivision with the election required by this section. The state shall reimburse each county for any costs incurred as a result of this section.

Section 2. Notwithstanding the provisions of § 12–13–9, the ballot explanation shall state: "A yes vote is a vote to fund property tax relief through a sales tax increase and a no vote is a vote to fund property tax relief through a medical services provider tax. If the ballot measure is approved, a one-half cent sales tax increase will go into effect on September 1, 1995, and the medical services provider tax previously enacted by the Legislature will not go into effect. If the ballot measure is not approved, the medical services provider tax previously enacted by the Legislature will go into effect on August 1, 1995.

Section 3. That House Bill No. 1350 as previously enacted by the Seventieth Legislature be amended as follows:

Section 21. The provisions of this Act apply only to gross receipts from services performed after August 1, 1995.

Section 4. At the special election required by section 1 of this Act, the following bill shall be the question:

"FOR AN ACT ENTITLED, An Act to increase the retail sales and services tax, use tax, and amusement device excise tax and to repeal the medical services provider tax.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF SOUTH DAKOTA:

Section 1. That § 10–45–2 be amended to read as follows:

10–45–2. There is hereby imposed a tax upon the privilege of engaging in business as a retailer, a tax of four and one-half percent upon the gross receipts of all sales of tangible personal property consisting of goods, wares, or merchandise, except as taxed by § 10–45–3 and except as otherwise provided in this chapter, sold at retail in the State of South Dakota to consumers or users.

Section 2. That § 10–45–5 be amended to read as follows:

10–45–5. There is imposed a tax at the rate of three percent upon the gross receipts of any person from engaging in the business

of leasing farm machinery or irrigation equipment used for agricultural purposes and four and one-half percent upon the gross receipts of any person from engaging or continuing in any of the following businesses or services in this state: abstracters; accountants; architects; barbers; beauty shops; bill collection services; blacksmith shops; car washing; dry cleaning; dyeing; exterminators; garage and service stations; garment alteration; cleaning and pressing; janitorial services and supplies; specialty cleaners; laundry; linen and towel supply; membership or entrance fees for the use of a facility or for the right to purchase tangible personal property or services; photography; photo developing and enlarging; tire recapping; welding and all repair services; cable television; and rentals of tangible personal property except leases of tangible personal property between one telephone company and another telephone company, motor vehicles as defined by § 32–5–1 leased under a single contract for more than twenty-eight days and mobile homes provided, however, that the specific enumeration of businesses and professions made in this section does not, in any way, limit the scope and effect of § 10–45–4.

Section 3. That § 10–45–6 be amended to read as follows:

10–45–6. There is hereby imposed a tax of four and one-half percent upon the gross receipts from sales, furnishing, or service of gas, electricity, and water, including the gross receipts from such sales by any municipal corporation furnishing gas, and electricity, to the public in its proprietary capacity, except as otherwise provided in this chapter, when sold at retail in the State of South Dakota to consumers or users.

Section 4. That § 10–45–6.1 be amended to read as follows:

10–45–6.1. There is hereby imposed on amounts paid for local telephone services, toll telephone services and teletypewriter services, a tax of four and one-half percent of the amount so paid. The taxes imposed by this section shall be paid by the person paying for the services. If a bill is rendered the taxpayer for local telephone service or toll telephone service, the amount on which the tax with respect to such services shall be based shall be the sum of all charges for such services included in the bill; except that if a person who renders the bill groups individual items for purposes of rendering the bill and computing the tax, then the amount on which the tax for each such group shall be based shall be the sum of all items within that group, and the tax on the remaining items not included in any such group shall be based on the charge for each item separately. If the tax imposed by this section with respect to toll telephone service is paid by inserting coins in coin operated telephones, the tax shall be computed to the nearest multiple of five cents, except that, where the tax is midway between multiples of five cents, the next higher multiple shall apply. The tax so paid shall be remitted at the same time as the sales tax imposed by this chapter.

Section 5. That § 10–45–8 be amended to read as follows:

10–45–8. There is imposed a tax of four and one-half percent upon the gross receipts from all sales of tickets or admissions to places of amusement and athletic events, except as otherwise provided in this chapter.

Section 6. That § 10–46–2.1 be amended to read as follows:

10–46–2.1. For the privilege of using services in South Dakota, except those types of services exempted by § 10–46–17.3, there is imposed on the person using the service an excise tax equal to four and one-half percent of the value of the services at the time they are rendered. However, this tax may not be imposed on any service rendered by a related corporation as defined in subdivision 10–43–1(11) for use by a financial institution as defined in subdivision 10–43–1(4) or on any service rendered by a financial institution as defined in subdivision 10–43–1(4) for use by a related corporation as defined in subdivision 10–43–1(11). For the purposes of this section, the term related corporation includes a corporation which together with the financial institution is part of a controlled group of corporations as defined in 26 U.S.C. § 1563 as in effect on January 1, 1989, except that the eighty percent ownership requirements

set forth in 26 U.S.C. § 1563(a)(2)(A) for a brother-sister controlled group are reduced to fifty-one percent. For the purpose of this chapter, services rendered by an employee for the use of his employer are not taxable.

Section 7. That § 10–46–2.2 be amended to read as follows:

10–46–2.2. An excise tax is imposed upon the privilege of the use of rented tangible personal property in this state at the rate of four and one-half percent of the rental payments upon the property.

Section 8. That § 10–58–1 be amended to read as follows:

10–58–1. There is imposed upon owners and operators a special amusement excise tax of four and one-half percent of the gross receipts from the operation of any mechanical or electronic amusement device.

Section 9. That House Bill No. 1350 as previously enacted by the Seventieth Legislature be repealed on July 31, 1995.

Section 10. The effective date of this ballot measure is August 1, 1995."