#27786, #27787

**2016 S.D. 27**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

#27786

IN RE:  THE REQUEST OF GOVERNOR DENNIS DAUGAARD
FOR AN ADVISORY OPINION IN THE MATTER OF THE
INTERPRETATION OF SOUTH DAKOTA
CONSTITUTION ARTICLE XI, § 2

#27787

IN RE:  THE REQUEST OF GOVERNOR DENNIS DAUGAARD
FOR AN ADVISORY OPINION IN THE MATTER OF THE
INTERPRETATION OF SOUTH DAKOTA
CONSTITUTION ARTICLE VIII, § 16

\* \* \* \*

ORIGINAL PROCEEDING

\* \* \* \*

REQUEST RECEIVED MARCH 11, 2016

OPINION FILED **03/24/2016**

#27786, #27787

# ADVISORY OPINION

## TO HIS EXCELLENCY, DENNIS DAUGAARD, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA.

[¶1.]    You requested two advisory opinions from this Court dealing with the constitutionality of SB 136 and SB 159.[1]  Both acts were passed by the 2016 South Dakota Legislature.  Your request indicates you must sign them, let them become law without your signature, or veto them within 15 days of March 11, 2016.  S.D. Const. art. V, § 5.  You asked:

### #27786 (SB 136: cropland assessment)

1. Does SB 136, An Act to permit certain cropland along lakes, rivers, and streams to be assessed as noncropland, violate the provisions of Article XI, § 2 of the South Dakota Constitution?

Article XI, § 2 provides, in part, that "[t]axes shall be uniform on all property of the same class[.]"

### #27787 (SB 159: tax credit)

2. Does SB 159, An Act to provide tax credit to insurance companies that contribute to an organization providing scholarships to certain students, violate the provisions of Article VIII, § 16 of the South Dakota Constitution?

Article VIII, § 16 prohibits the public support of sectarian schools, sectarian purposes, and sectarian instruction.

[¶2.]    By letter dated March 17, 2016, this Court informed you that it concluded that it is not appropriate to answer these questions by advisory opinion.

---

1.    SB 136 and SB 159 are appended to this opinion.

-1-

This formal opinion discusses the legal reasons the Court declined your requests for advisory opinions.

**I**

[¶3.]    "The doctrine of separation of powers has been a fundamental bedrock to the successful operation of our state government since South Dakota became a state in 1889." *Gray v. Gienapp*, 2007 S.D. 12, ¶19, 727 N.W.2d 808, 812.  Further "[i]t is a fundamental principle of our political system, recognized and respected by all thoughtful citizens, that, so far as possible, each department of government should act independently of the others." *In re Chapter 6, Session Laws of 1890*, 8 S.D. 274, 275-276, 66 N.W. 310 (1896).  The Attorney General is the authorized legal advisor to the executive department. *In re House Resolution No. 30*, 10 S.D. 249, 251-252, 72 N.W. 892 (1897).  As such, a gubernatorial request for an advisory opinion by the Supreme Court is limited to the "rarest instances." *Id.*

[¶4.]    Article V, § 13 of the 1889 South Dakota Constitution enlarged the usual jurisdiction and duties of the judges of the South Dakota Supreme Court by adding a unique and important proceeding devoid of the usual indicia of judicial proceedings. *In re Construction of Constitution*, 3 S.D. 548, 550, 54 N.W. 650, 651 (1893).[2]  Article V, § 13 provided:

---

2.    Only seven states adopted and retained a constitutional provision analogous to Article V, § 13.  Comment, *Advisory Opinions*, 21 Yale L.J. 83 (1911).  They were Colorado, Florida, Maine, Massachusetts, New Hampshire, Rhode Island, and South Dakota.  *Id.*  In 1889 South Dakota became a state the same day that North Dakota, Montana, and Washington did.  The Enabling Act, ch. 180, 25 Stat. 676 (1889).  None of the other three states adopted a similar provision in its constitution.

continued . . .

> The governor shall have authority to require the opinion of the judges of the supreme court upon important questions of law involved in the exercise of his executive powers and upon solemn occasions.

[¶5.] The Court recognized that under Article V, § 13, it was "impossible to announce any rule applicable to all cases for determining what questions are of sufficient importance, or what occasions are of sufficient solemnity, to warrant the employment of this unusual proceeding." *In re Chapter 6,* 8 S.D. at 275-276, 66 N.W. at 311.

> These are matters which must rest largely in the discretion of both the executive and judiciary; for, while the executive will have to first judge whether any given question justifies a request for the opinion of the judges, upon the latter must devolve the responsibility of deciding whether it is one upon which the constitution contemplates an opinion should be given. It is submitted, however, that, for many excellent reasons, great caution should be employed both by the executive and the judges in exercising the discretion conferred upon each. *In re Constitutionality of Senate Bill No. 65*, 12 Colo. 466, 21 Pac. 478.

*Id.* In propounding and answering questions pursuant to Article V, § 13, "the same must relate to matters exclusively juris publici."[3] *In re House Resolution No. 30*, 10 S.D. at 251-252, 72 N.W. at 892 (quoting *In re Constitutionality of Senate Bill No. 65*, 12 Colo. 466, 21 Pac. 478). In *In re Construction of Constitution*, 3 S.D. at

---

. . . continued

Early South Dakota case law relied on decisions from Massachusetts in interpreting Article V, § 13 of the 1889 South Dakota Constitution since Massachusetts had significant case law on its similar constitutional provision. *In re Opinion of the Judges*, 34 S.D. 650, 655, 147 N.W. 729, 731 (1914).

3. Juris publici is defined as "of public right; relating to common or public use, or to public law." *Juris publici*, Black's Law Dictionary (10th ed. 2014).

552, 54 N.W. at 652,[4] the Court cautioned:

> There can be no due process of law unless the party to be affected has his day in court. Yet a hasty construction and application of this provision might lead to the ex parte adjudication of private rights by means of an executive question, without giving the party interested a day or voice in court.

Thus, since early statehood, this Court has been concerned with the protection of private rights by direct access to the courts to adjudicate disputes concerning those rights.

[¶6.] Article V, § 13 of the 1889 constitution is now found in Article V, § 5 and was a part of the 1972 revision of the entire judicial article approved by the voters. It reads:

> The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions.

*Id.*

[¶7.] Article V, § 5 is disjunctive and presents two situations in which this Court has the discretion to answer gubernatorial requests for an advisory opinion. The first is "upon important questions of law involved in the exercise of his

---

4. While the Constitutional Debates of 1883, 1885, and 1889 have assisted us with other constitutional inquires, *see Wegleitner v. Sattler,* 582 N.W.2d 688 (S.D. 1988), they provide no assistance in construing Article V, § 5, or the former Article V, § 13. The early opinions of this Court, however, are highly helpful because they were authored by justices who served as delegates to the Constitutional Conventions and helped draft the South Dakota Constitution. *McDonald v. School Bd. of Yankton,* 246 N.W.2d 93, 97 (1976); *Green v. Siegel, Barnett & Schutz,* 1996 S.D. 146, ¶ 19 n.10, 557 N.W.2d 396, 402 n.10; David Gilbertson & David S. Barari, Indexing the South Dakota Constitutional Conventions; *A 21st Century Solution to a 125 Year Old Problem,* 53 S.D. L. Rev. 260 (2008).

executive power." S.D. Const. art. V, § 5. The second is "upon solemn occasions." *Id.*

## II

[¶8.] Our first inquiry is whether the issue of the constitutionality of SB 136 and the constitutionality of SB 159 raises important questions of law involved in the exercise of your executive power under Article V, § 5.

[¶9.] As a general matter this Court should:

> . . . reserve answer to requests for advisory opinions to those situations in which the exercise of the Governor's executive power will result in immediate consequences having an impact on the institutions of state government or on the welfare of the public and which involve questions that cannot be answered expeditiously through usual adversary proceedings.

*In re Opinion of the Supreme Court Relative to the Constitutionality of Chapter 239, Session Laws of 1977*, 257 N.W. 2d 442, 447 (1977) (Wollman, J., concurring specially).

[¶10.] The Court has, on occasion, answered questions involving the exercise of the governor's executive power:

> Governor Kneip's letter of July 5 did not state the questions propounded "involve . . . the exercise of (the Governor's) executive power." We find that they are not so involved. The Governor's only function under the Act is to receive an annual report from the State Planning Bureau. No action the Governor proposed to take would be affected by our answer. The Governor is not required to exercise his executive power under this act.
>
> This inquiry is in this respect unlike others which we have answered. These have involved at least some contemplated action by the Governor. *See In re Opinion of Supreme Court*, S.D., 257 N.W.2d 442 (1977) (Governor to appoint members of bridge authority); *In re Opinion of Supreme Court*, 87 S.D. 156, 204 N.W.2d 184 (1973) and *In re Opinion of Justices*, 87 S.D.

114, 203 N.W.2d 526 (1973) (Governor's power under executive reorganization); *In re Opinion of Judges*, 61 S.D. 107, 216 N.W. 295 (1933) (Duty of Governor to recommend reapportionment to legislature); *In re Opinion of Judges*, 58 S.D. 72, 234 N.W. 671 (1931) (Governor to assume chairmanship of Department of Rural Credits); *In re Opinion of Judges*, 38 S.D. 635, 162 N.W. 536 (1917) (Governor's power to appoint members of Rural Credit Board). We refused to issue an advisory opinion where no executive question was involved. *In re Construction of Constitution*, 3 S.D. 548, 54 N.W. 650 (1893).

Two inquiries which we have answered involved minimal exercise of executive power, *In re Opinion of Judges*, 61 S.D. 107, 246 N.W. 295 (1933) and *In re State Census*, 6 S.D. 540, 62 N.W. 129 (1895). These cases are, however, distinguishable on their facts from the present inquiry. They involved the reapportionment of the legislature, which would affect the entire political system of this state. The legislature was either in session, or soon would be, and the Governor had to know at once whether he would recommend reapportionment. Executive action was contemplated which required an answer to the Governor's questions.

*To His Excellency Wollman*, 268 N.W.2d 820, 822 (S.D. 1978) (footnote omitted). In these instances there was some contemplated action by the governor.

[¶11.]     Neither SB 136 nor SB 159, the acts forming the basis for your request for an advisory opinion, appear to us to require the exercise of your executive power. *To His Excellency Wollman*, 268 N.W.2d at 823. The questions of law you present do not involve your veto power and once you sign, veto, or fail to sign these bills, no further exercise of your executive power is required. *In re Request for Opinion of the Supreme Court*, 321 N.W.2d 101, 102 (1982).[5] The duties of the Department of Revenue and Regulation under SB 136 and the duties of the Department of Labor

---

5. The constitutionality of SB 136 and SB 159 has no impact on the governor's veto power granted under Article IV, § 4 of the constitution. The veto power is a discretionary political power that may be exercised for any reason.

and Regulation under SB 159 "are not such as require the exercise of executive power as the term is employed in Article V, § 5 of the South Dakota Constitution." *To His Excellency Wollman*, 268 N.W.2d at 822, n.2.

### III

[¶12.] The second inquiry is whether the issues of the constitutionality of SB 136 and the constitutionality of SB 159 rise "upon solemn occasions." S.D. Const. art. V, § 5.

[¶13.] In determining whether a request for an advisory opinion presents a solemn occasion, the Court weighs whether an important question of law is presented, whether the question presents issues pending before the Court, whether the matter involves private rights or issues of general application, whether alternative remedies exist, whether the facts and questions are final or ripe for an advisory opinion, the urgency of the question, whether the issue will have a significant impact on state government or the public in general, and whether the Court has been provided with an adequate amount of time to consider the issue. *In re Janklow*, 530 N.W.2d 367, 369 (S.D. 1995).

[¶14.] An application of these factors to SB 136 and SB 159 does not support this Court rendering an advisory opinion. You have asked whether each bill violates the constitution. This Court recognizes that constitutional issues are important issues of law. *In re Janklow*, 530 N.W.2d at 369. This Court has considered the constitutionality of legislation pending before a governor where a solemn occasion arises because the circumstances have a significant statewide

impact on the welfare of the citizens of the state, especially those with the potential for a devastating economic impact. *Id.*

[¶15.]        In 1978, however, this Court declined to answer questions regarding the constitutionality of tax increment financing, holding that the facts did not rise to a solemn occasion because:

> The subject matter of this inquiry does not affect the entire governmental structure to the same degree as reapportionment. It also appears to us that alternative remedies exist, and although they may involve some expense and delay, they are not sufficiently inadequate so as to justify circumventing the judicial process. We believe that the need for a determination is not so urgent as to require our opinion at this time. No statute, the present Act included, needs a determination of its constitutionality in order to render it effective. If some person is aggrieved by municipal action under this Act, he may pursue his remedies through the usual judicial channels.

*To His Excellency Wollman*, 268 N.W.2d at 823. After the Court declined to answer the governor's request, the Attorney General and resident taxpayers brought an original proceeding seeking declaratory judgment. Due process was followed, interested parties had their day in court, and the matter was researched, briefed, and argued. In 1984, in *Meierhenry v. City of Huron*, 354 N.W.2d 171 (S.D. 1984), we upheld the constitutionality of tax incremental districts.

[¶16.]        Although the constitutionality of SB 136 and SB 159 are not questions pending before this Court, those questions may involve private rights, are not urgent,[6] and will not have a significant impact on state government or the public in

---

6.        If SB 136 and SB 159 become law, they will become effective on July 1, 2016.

general. *In re Janklow*, 530 N.W.2d at 369. Additionally, alternative remedies exist through the usual judicial channels. While the alternative remedies may involve some expense or delay, "they are not sufficiently inadequate so as to justify circumventing the judicial process." *To His Excellency Wollman*, 268 N.W.2d at 823.

[¶17.] The history of your request regarding SB 136 and SB 159 highlights the efficacy of giving interested parties a day and voice in court. *In re Construction of Constitution*, 3 S.D. at 552, 54 N.W. at 652. Your two requests for advisory opinions regarding the constitutionality of SB 136 and SB 159 were filed with this Court on March 11, 2016. Four days later, on March 15, 2016, the Institute for Justice filed a motion asking the Court to accept an Amicus Curiae brief supporting the constitutionality of SB 159. The same day, the South Dakota Corn Growers Association filed a motion for an order granting it leave to file an Amicus Curiae brief arguing the unconstitutionality of SB 136.

[¶18.] The appearance of private entities seeking leave to file Amicus Curiae briefs in both cases militates against advisory opinions pursuant to Article V, § 5. The filing regarding SB 136 concerning the constitutionality of that bill may also obligate the Attorney General to defend the constitutionality of the bill. *See* SDCL 1-11-1, SDCL 15-6-24(c). We take judicial notice, SDCL ch. 19-10, that if the proponents of SB 159 and opponents of SB 136 were allowed to file briefs, other interested parties would likely file leave to respond. This is beyond the scope of an

advisory opinion proceeding. Due process considerations dictate that the affected parties have their day in court before this Court reaches a decision on the merits.[7]

IV

[¶19.] It is apparent from your requests for advisory opinions regarding the constitutionality of SB 136 and SB 159 that you took your responsibility under Article V, § 5 seriously and with "great caution." *In re Chapter 6,* 8 S.D. at 275-276, 66 N.W. at 310. Our responsibility under Article V, § 5 led us to the conclusion it is not appropriate to answer these questions by advisory opinion. Both questions raise important issues of tax and education policy with the potential for far reaching implications not easily resolved under the existing time constraints and without the benefit of full briefing and argument by interested parties.

---

7. The amicus applicants' attempt to join these proceedings appears to be unique in our jurisprudence. It is clear that both questions before the Court today raise significant questions which may affect private rights. We do, however, have discretion to refuse amicus requests in other cases. We do not mean to suggest that the mere filings foreclose the issuance of advisory opinions.

#27786, #27787

Respectfully submitted this _____th day of March, 2016.


/s/_____
David Gilbertson, Chief Justice


/s/_____
Steven L. Zinter, Supreme Court Justice


/s/_____
Glen A. Severson, Supreme Court Justice


/s/_____
Lori S. Wilbur, Supreme Court Justice


/s/_____
Janine M. Kern, Supreme Court Justice