#26089

**2011 S.D. 44**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

IN RE:  THE REQUEST OF GOVERNOR DENNIS DAUGAARD
FOR AN ADVISORY OPINION IN THE MATTER OF THE
INTERPRETATION OF SOUTH
DAKOTA CONSTITUTION
ARTICLE V, §§ 2 and 6

\* \* \* \*

ORIGINAL PROCEEDING

\* \* \* \*

REQUEST RECEIVED JULY 13, 2011

OPINION FILED **07/26/11**

ADVISORY OPINION

TO HIS EXCELLENCY, DENNIS DAUGAARD, THE GOVERNOR OF THE STATE

OF SOUTH DAKOTA.

[¶1.]     Pursuant to South Dakota Constitution article V, § 5 you have

requested an advisory opinion from the Supreme Court on two important questions

of law dealing with the eligibility requirements for individuals seeking appointment

to the South Dakota Supreme Court.  You ask:

> 1. What actions or intent are sufficient to satisfy the
>    requirement of Article V, §§ 2 and 6 that justices of the
>    Supreme Court be voting residents within the district from
>    which they are appointed?
>
> 2. At what point in time, relative to the appointment or the
>    assumption of the position on the Supreme Court, must these
>    actions be undertaken or intentions be formed?

[¶2.]     In 2009 Governor M. Michael Rounds posed questions relating to

Supreme Court eligibility to this Court in his request for an advisory opinion.  *In re*

*Request of Governor M. Michael Rounds for an Advisory Opinion in the Matter of*

*the Interpretation of South Dakota Constitution Article V, Section 5*, #25467,

December 3, 2009 (unpublished).  The Court declined to answer the request because

there was no vacancy on the Supreme Court that the Governor was required to fill.

We noted:

> At this time there is no vacancy on the Supreme Court that you
> are required to fill.  Accordingly, there is no contemplated
> exercise of your executive power as required by Article V, § 5.  In
> addition, this matter does not present a solemn occasion because
> there is little likelihood of the circumstances surrounding your
> questions arising during the time remaining in your term.  Any
> opinion offered by this Court at this time would be based merely
> upon speculation.  Such an opinion may not be conclusive on the
> rights of future parties and thus may not be binding on anyone.
> Although we realize your question is primarily one of law, the

factual circumstances presented in the course of an actual vacancy, application, or proposed appointment may better inform our decision. An opinion at this time could unwittingly hamper your successor in a manner unforeseeable at this juncture. We decline to do this.

*Id.*

[¶3.]	Currently, however, there is a vacancy as of June 8, 2011 on the Supreme Court created by the retirement of Justice Judith K. Meierhenry. SDCL 3-4-1(2) ("Every office shall become vacant on the happening of . . . resignation[.]").

A vacancy, as defined by law, in the office of a Supreme Court justice or circuit court judge, shall be filled by appointment of the Governor from one of two or more persons nominated by the judicial qualifications commission.

S.D. Const. art. V, § 7; SDCL 3-4-3(1). In accordance with Article V, § 7, the Judicial Qualifications Commission has provided you with a list of nominees for the position vacated by Justice Meierhenry's retirement. Justice Meierhenry served from the Fourth Supreme Court District[1] and the person you appoint will as well. Several of the people that the Judicial Qualifications Commission nominated for that position, however, are not residents of the Fourth Supreme Court District as of the date of your letter. The crux of your request is the timing of when a nominee for

---

1.	SDCL 16-1-1 provides, in part:

The state is divided into five Supreme Court districts from each of which a justice shall be selected as follows:

. . .

Fourth District. The counties of Union, Clay, Yankton, Hutchinson, Hanson, Davison, Bon Homme, Douglas, Aurora, Brule, Charles Mix, Gregory, Tripp, Lyman, McCook, Turner and that part of Lincoln

(continued . . .)

appointment to the vacant Supreme Court position serving the Fourth District must establish voting residency in that district.

[¶4.]        Pursuant to Article V, § 5, "The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions." This provision is disjunctive. *In re Opinion of Supreme Court Relative to the Constitutionality of Chapter 239, Session Laws of 1977,* 257 N.W.2d 442 (S.D. 1977). It presents two situations in which an opinion can be given. *Id.*

[¶5.]        In this case, you are required to exercise your executive power and appoint a nominee to the Supreme Court vacancy. S.D. Const. art. V, § 7. The action that you take will be affected by our answer to the questions you pose. *To His Excellency Wollman*, 268 N.W.2d 820, 822 (S.D. 1978). "The power which the people of this state have entrusted to a [Supreme Court justice] affects the people's lives, welfare and property to no small extent." *In re Fuller*, 2011 S.D. 22, ¶ 38, 798 N.W.2d 408, 419 (quoting *Cummings v. Mickelson*, 495 N.W.2d 493, 496 (S.D. 1993) (plurality)). Because you raise important questions of law involved in the exercise of your executive power, we will answer those questions.

## ANALYSIS

[¶6.]        "The language used in a constitution is of primary importance in determining when the qualification to office must exist." *Cummings*, 495 N.W.2d at 498. The words used in a constitutional provision "cannot be analyzed in isolation

---

(continued . . .)
        County that is not included in the second Supreme Court district shall
                                                                (continued . . .)

to the exclusion of the rest of the provision." *Id.* at 500.  Additionally, in construing

a constitutional provision, we "must give regard to the whole instrument, must seek

to harmonize the various provisions, and must, if possible, give effect to all the

provisions." *S.D. Auto. Club v. Volk*, 305 N.W.2d 693, 696 (S.D. 1981).

*South Dakota Constitution Article V, § 2*

[¶7.]        Your inquiry suggests that Article V, §§ 2 and 6 each require justices of

the Supreme Court to be voting residents of the district from which they are

appointed.  Article V, § 2, however, makes no mention of voting resident or voting

residence.  It provides:

> The Supreme Court is the highest court of the state.  It consists
> of a chief justice and four associate justices.  Upon request by
> the Supreme Court the Legislature may increase the number of
> justices to seven.  All justices shall be selected from compact
> districts established by the Legislature, and each district shall
> have one justice.

[¶8.]        The language key to your inquiry is that "[a]ll justices shall be selected

from compact districts established by the Legislature, and each district shall have

one justice." *Id.*  "Initially, it should be noted that words such as 'from,' when used

with respect to measurement of time, have no fixed or specific meaning.  'Standing

alone they are ambiguous and equivocal.'" *Cummings*, 495 N.W.2d at 500 (citing

*Fetters v. City of Des Moines*, 149 N.W.2d 815, 818 (Iowa 1967)).  However, the

historical background of this provision provides guidance in determining its

meaning and intent.  *City of Sioux Falls v. Sioux Falls Firefighters, Local 814,* 89

S.D. 455, 234 N.W.2d 35, 37 (1975).

_____

(continued . . .)
        constitute the fourth Supreme Court district.

#26089

[¶9.]      "Usually amendments [to the Constitution] are adopted for the express purpose of making a change in the existing system." *Volk,* 305 N.W.2d at 697. The 1972 revision of Article V that was approved by the electorate "reorganized the article, established a unified judicial system and made numerous changes throughout." S.D. Const. art. V, Historical Note. Article V, § 2, combined the former provisions of Article V, §§ 5, 6, and 11 of the 1889 South Dakota Constitution. While changes were made, *see* S.D. Const. art. V, § 2 Historical Note, significant to our analysis is that the 1972 amendment retained the 1889 requirement that justices be chosen from "districts."[2]

[¶10.]      To determine the significance of the selection of justices from districts we resort to the view of the drafting body of that provision. *Cummings,* 495 N.W.2d at 499. The minutes of the Constitutional Revision Commission reveal that its members debated whether there was a need for the geographical distribution of justices or whether justices should be selected at large.[3] It was the Commission's consensus that justices should be geographically distributed. The electorate in 1972 concurred in this view.

---

2.    Article V, § 5 of the 1889 Constitution provided: "The supreme court shall consist of three judges, to be chosen from districts by qualified electors of the state at large, as hereinafter provided." Article V, § 5 now requires that justices be "selected from compact districts."

3.    The early minutes of the Commission meetings indicate strong initial disagreement over selection and election of Justices on a state-wide basis versus selection and election by districts. Those who argued for selection and election on a state-wide basis indicated their intent to file a dissent to the district concept. Yet through future discussions and constitutional drafts, the report of the Commission that recommended §§ 2 and 6 in their current form
(continued . . .)

#26089

*South Dakota Constitution Article V, § 6*

[¶11.]        Article V, § 6 provides:

> Justices of the Supreme Court, judges of the circuit courts and persons presiding over courts of limited jurisdiction must be citizens of the United States, residents of the state of South Dakota and voting residents within the district, circuit or jurisdiction from which they are elected or appointed. No Supreme Court justice shall be deemed to have lost his voting residence in a district by reason of his removal to the seat of government in the discharge of his official duties. Justices of the Supreme Court and judges of circuit courts must be licensed to practice law in the state of South Dakota.

It is this provision, and not Article V, § 2, that requires Supreme Court justices to be "voting residents within the district . . . from which they are elected or appointed."

[¶12.]        We thoroughly analyzed the historical background, legislative history and language of Article V, § 6 in *Cummings*, 495 N.W.2d at 498-502. The plurality of the Court concluded: "We hold that a person appointed to the office of circuit court judge must establish residency in that circuit prior to assuming said office." *Id.* at 502. Based on the plurality opinion's analysis of § 6, we adhere to that holding in responding to today's inquiry. The text of § 2 establishes the same requirement applies to persons selected by the Governor to become Supreme Court justices. They must establish voting residency prior to taking the oath of office which vests them with the office of justice.[4]

_____

(continued . . .)
> indicates compromises were reached. The Commission's report on these sections was unanimous.

4.     The criteria for determining voting residence are found in SDCL 12-1-4:

(continued . . .)

*The Juxtaposition of*
*South Dakota Constitution Article V, §§ 2 and 6*

[¶13.]     At first blush it appears that Article V, § 2's directive that "[a]ll

justices shall be selected from compact districts . . . and each district shall have one

justice" is at odds with Article V, § 6's requirement that "justices . . . must be . . .

voting residents within the district . . . from which they are elected or appointed."

_____

(continued . . .)

> For the purposes of this title, the term, residence, means the place in which a person has fixed his or her habitation and to which the person, whenever absent, intends to return.
>
> A person who has left home and gone into another state or territory or county of this state for a temporary purpose only has not changed his or her residence.
>
> A person is considered to have gained a residence in any county or municipality of this state in which the person actually lives, if the person has no present intention of leaving.
>
> If a person moves to another state, or to any of the other territories, with the intention of making it his or her permanent home, the person thereby loses residence in this state.

In addition, South Dakota's voter registration application requires the voter to declare, under penalty of perjury:

- I am a citizen of the United States;
- I actually live at and have no present intention of leaving the above address;
- I will be 18 on or before the next election;
- I have not been judged mentally incompetent;
- I am not currently serving a sentence for a felony conviction which included imprisonment, served or suspended, in an adult penitentiary system;
- I authorize cancellation of my previous registration as written below.

http://www.sdsos.gov/electionsvoterregistration/votregformlongbweffec tive20080908 (last visited July 15, 2011).

The members of the Constitutional Revision Commission, however, were acutely aware of the inconsistencies caused throughout the years by heavily amending the 1889 Constitution. *See State v. Wilson*, 2000 S.D. 133, ¶ 8, 618 N.W.2d 513, 516. In drafting the 1972 Constitution they sought to avoid inconsistences and conflicts between provisions. *Id.* It is this Court's responsibility to give a reasonable construction to each provision, give effect to each provision, and construe them together to make them harmonious and workable. *See Volk*, 305 N.W.2d at 696.

[¶14.] In *Cummings,* 495 N.W.2d at 499, we noted that the drafters of Article V, § 6 eliminated the arbitrary age and period of residency requirements found in the former Article V, § 25.

> With the above stated Commission goal of doing away with "illogical" residency requirements, it would make little sense to require an attorney to declare residency in the circuit with a judicial vacancy just days prior to making application to the Judicial Qualifications Commission or just prior to receiving appointment.

*Cummings*, 495 N.W.2d at 500.

[¶15.] The word "justice" as used in Article V is not merely a generic description. It carries with it a specific meaning. Before 1972, members of the South Dakota Supreme Court were known as "judges of the South Dakota Supreme Court." The 1972 amendments made a specific change in the title of the judicial office. Holders of it were now known as "justices" not "judges."

[¶16.] In addition, the drafters of the 1972 Constitution changed the scope of the constitutional provision. While the 1889 Constitution referred to "person . . . eligible to the office of judge," Article V, § 6 refers to "[j]ustices of the Supreme Court, judges of the circuit courts and persons presiding over courts of limited

#26089

jurisdiction[.]" *Cummings*, 495 N.W.2d at 501. "Just because an applicant obtains the right to hold office does not automatically make him or her into a circuit court judge." *Id.* The 1889 text references a person who had the legal opportunity to become a judge at some point in the future while the 1972 text contemplates a situation where the individual has already achieved that status.[5] Thus, Article V, § 6 applies to "justices," not a "person . . . eligible to the office of a [judge]," "applicants," "certified applicants" or the like. *Cummings,* 495 N.W.2d at 501. Consistent with that Article V, § 7 which says a vacancy shall be filled by "appointment" from a list of "persons" who hold the status of "nominated by the judicial qualifications commission." Although "appointed" to become a Supreme Court justice, one does not achieve that office until he or she takes the oath of office and it is confirmed that he or she is licensed to practice law in South Dakota, a resident of South Dakota, and a citizen of the United States.

[¶17.]       An early case involved a vacancy on the Supreme Court due to death. *In re Supreme Court Vacancy*, 4 S.D. 532, 57 N.W. 495 (1894). The Court held that the vacancy would continue to exist until there was a person authorized to assume the office and that person commenced discharging the duties of the judicial office. *Id.* at 534, 57 N.W. at 495. Under this logic the current vacancy due to the

---

5.    That interpretation is reinforced by the next two sentences of Article V, § 6, both of which reference "justices" and not those selected to become one in the future. The first says that "[n]o Supreme Court justice shall be deemed to have lost his voting residence in a district by reason of his removal to the seat of government in the discharge of his official duties." The final sentence says that "justices of the Supreme Court . . . must be licensed to practice law in South Dakota." Thus, all three sentences of Article V, § 6 reference the rights and duties of sitting Supreme Court justices.

retirement of Justice Meierhenry continues to exist until her appointed successor commences discharging the duties of office of "justice." Accordingly, we hold that voting residency must be established prior to assuming office by taking the oath of office. *Cummings*, 495 N.W.2d at 502.[6]

[¶18.]     A similar analysis applies to Article V, § 2, which provides: "[a]ll justices shall be selected from compact districts[.]" There the drafters of the 1972 Constitution struck a balance to ensure that the best qualified person would be selected and that each portion of South Dakota would be represented on the Supreme Court. The use of the term "justice" in Article V, § 2, as in § 6, indicates that the triggering event for both sections is when the oath is taken and the governor's appointee becomes a justice. Establishing voting residency in the district prior to taking the oath also establishes selection from the district.

[¶19.]     Consequently, a person selected by the Governor to fill a vacant seat on the Supreme Court becomes a justice by qualifying for office by taking an oath or affirmation. SDCL 3-1-5. Prior to taking that oath, however, that person must fulfill the eligibility requirement to hold that office including establishing voting

---

6.     The *Cummings* opinion further noted with regards to the Commission's drafting:

> An early Commission draft of September 3, 1970, contained a requirement that a Supreme Court justice be a resident "when appointed or elected." Thus, it is clear that the Commission considered the concept of residency prior to taking office in some form. This language was not retained and after numerous subsequent drafts, Art[icle] V, § 6 was to become the Commission's recommendation without dissent.

*Cummings*, 495 N.W.2d at 502 n.10.

residency in the district from which he or she is appointed. By doing so, that person becomes a justice after taking the oath and complies with the constitutional directives of being a voting resident of the district from which he or she was selected.

Respectfully submitted this 26th day of July, 2011.

_____

David Gilbertson, Chief Justice

_____

Glen A. Severson, Supreme Court Justice

_____

Judith K. Meierhenry, Supreme Court Justice (Ret.)

[¶20.] I agree with the majority's opinion regarding the acts necessary to establish voting residency. *See supra* note 4. With respect to the time of establishing residency, three constitutional provisions control. South Dakota Constitution article V, § 2 requires that justices be "selected *from* compact districts established by the legislature." (Emphasis added.) Article V, § 6 requires justices to have voting residency "within the district . . . from which they are . . . *appointed.*" (Emphasis added.) And Article V, § 7 requires that Supreme Court vacancies "shall be filled by *appointment* of the Governor[.]" (Emphasis added.) Because the Governor's selection of justices must be "from compact districts," and because the selection must be by "appointment," I conclude that voting residency must be established at the time of the appointment; that is, at the time the Governor's appointment becomes final by its filing in the office of the Secretary of State.

[¶21.] As the majority opinion notes, there was disagreement among the members of the 1972 Constitutional Revision Commission whether Supreme Court justices should be selected from districts or from the State at large. *See supra* ¶ 10. The disagreement was resolved by the 1972 language in Article V, § 2 retaining the requirement that "[a]ll justices shall be selected from compact districts . . . and each district shall have one justice." The 1972 revision further requires that the Governor's selection be a voting resident within the district from which they are "appointed." S.D. Const. art. V, § 6.

[¶22.] Our interpretation of these provisions should not render the words "appointed" and "from compact districts" meaningless. In our prior decision on the time for establishing residency for judicial office, we noted that "[n]o wordage should

be found to be surplus. No provision can be left without meaning. If possible, effect should be given to every part and every word." *Cummings v. Mickelson*, 495 N.W.2d 493, 500 (S.D. 1993) (Gilbertson, Cir. J., plurality) (internal citations omitted). To give meaning to the words "appointed," "from compact districts," and a "voting resident[] within the district," the person appointed by the Governor must have established voting residency in the vacant district at the time of the appointment.

[¶23.] "SDCL 3-4-6 sets forth the requirements for [gubernatorial] appointments. They must be in writing and filed with the Secretary of State." *Id.* at 496 n.3. "Appointments are complete when the appropriate certificate of appointment is filed with the Secretary of State." *Id.* at 504 (Steele, Cir. J., concurring in result). *See also Burke v. Schmidt*, 86 S.D. 71, 80, 191 N.W.2d 281, 286 (1971) (stating that the office of the Secretary of State "is the place appointments are required to be filed"). Because filing the appointment with the Secretary of State is the last executive act necessary to effectuate an appointment, residency must be established in the district by the time the written appointment is filed.

[¶24.] I disagree with today's majority opinion adopting the writing of two Justices in *Cummings*. 495 N.W.2d 493 (Gilbertson, Cir. J.; Miller, C.J.) (concluding that residency must be established at the time the candidate *qualifies* for office by taking the requisite oath rather than the time of appointment). *See supra* ¶¶ 12, 17-19. The Constitution speaks only in terms of the Governor's selection by appointment, and there is a clear difference between the Governor's act of appointment to an office and a candidate's *subsequent* act of qualifying for that office

(the oath). The Legislature has recognized that these acts are different and that each act occurs at a different time: "Persons appointed to offices . . . shall qualify in the same manner as is required of those elected, the time of which shall be prescribed in their appointment." SDCL 3-4-7.

[¶25.] Nevertheless, the majority eschews the word appointment in favor of the word qualification. The majority concludes that a person may be appointed from a district other than the one in which the vacancy exists as long as the person establishes residency prior to "assuming office"; i.e. "prior to taking the oath of office which vests them with the office of justice." *See supra* ¶¶ 12, 17. There is, however, no constitutional language referring to residency at the time of oath, qualification, or assumption of office. The Constitution requires residency within districts and the Governor's selection of persons by "appointment" from districts. S.D. Const. art. V, §§ 2, 6 and 7. The majority's view, that the residency requirement only applies when a person *already appointed* later assumes office, renders the words selection "from" districts by "appointment" meaningless.[7]

---

7. The majority essentially concedes that the word "appointment" from districts is meaningless when it acknowledges that under its view, the triggering event for residency is when the "Governor's *appointee"* (a person already appointed) ultimately becomes a justice. *See supra* ¶ 18 (emphasis added). Further, since the oath can only be taken after appointment, it is difficult to understand how the majority can conclude that "[e]stablishing voting residency in the district prior to taking the oath also establishes selection [(appointment)] from the district." *See id.*

    The majority suggests the failure to adopt a 1970 Constitutional Revision Commission draft suggests that the 1972 final version eliminated any requirement that the applicant be a resident of the district "when appointed or elected." *See supra* note 6. The Commission minutes do not reflect why that draft was proposed or why it was not adopted. But more importantly, the

(continued . . .)

-14-

[¶26.]     Moreover, because Article V, § 6 governs both appointments and elections, under the majority's view, persons now seeking election for circuit judgeships will no longer have to become a voting resident of the circuit at the time of an election. This will permit lawyers and judges in one circuit to run for circuit judgeships in other circuits without ever becoming a voting resident, unless they are fortunate enough to defeat the resident judge in the election. In adopting the 1972 amendments, the voters could not have intended the majority's view. Judge Steele's controlling opinion in *Cummings* (requiring residency at the time of appointment or election) should continue to control the time of residency question. 495 N.W.2d at 502-04 (Steele, Cir. J., concurring in result). Only that opinion reconciles all of the 1972 constitutional revisions. *See id.* at 504 ("reconcil[ing] all of the new provisions with the old [to] have the effect of treating judicial candidates and appointees equally in terms of residency requirements").

---

(continued . . .)

Court's suggestion is inconsistent with the final language requiring that justices have voting residency in the district from which they are "appointed," that justices be "selected *from* compact districts," and that the Governor make that selection by "appointment." S.D. Const. art. V, §§ 2, 6 and 7.

Finally, "nothing in the legislative history of Art[icle] V, § 6 . . . indicates any intent to change the old requirement that one need only be a resident of the circuit [or in this case district] at the time of election or appointment; the intent was merely to eliminate the age and [one year] durational residency requirements." *Cummings*, 495 N.W.2d at 504 (Steele, Cir. J., concurring in result). The Commission thought the age and *one year* residency provisions were "[a]rbitrary standards." There is, however, no history suggesting that the Commission rejected all requirements of being a resident at the time of election or appointment. *See id.*

_____

Steven L. Zinter, Supreme Court Justice

[¶27.]     I concur with the writing of Justice Zinter.

_____

John K. Konenkamp, Supreme Court Justice