#29441
**2020 S.D. 58**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

#29441

IN RE: THE REQUEST OF GOVERNOR KRISTI NOEM
FOR AN ADVISORY OPINION IN THE MATTER OF THE
INTERPRETATION OF SOUTH DAKOTA CONSTITUTION
AND STATE LAWS REGARDING ELIGIBILITY FOR
CRF GRANT PROGRAMS

\* \* \* \*

ORIGINAL PROCEEDING

REQUEST RECEIVED OCTOBER 13, 2020

OPINION FILED **10/22/2020**

#29441

## ADVISORY OPINION

## TO HER EXCELLENCY, KRISTI NOEM, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA.

[¶1.] Pursuant to Article V, § 5 of the South Dakota Constitution,[1] you have requested an advisory opinion from this Court on whether the South Dakota Constitution or any state law prohibits a current state legislator from being eligible to receive funds from coronavirus relief fund (CRF) Grant Programs.

### A.

[¶2.] Pursuant to § 5001 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), South Dakota received $1,250,000,000 in federal funds (CRF funds) to cover necessary expenditures due to the COVID-19 public health emergency. During a special session on October 5, 2020, the South Dakota Legislature passed House Bill 1001 (HB 1001) and adopted Senate Concurrent Resolution 601 (SCR 601) to address the expenditure of these funds.

[¶3.] HB 1001 revised the general appropriations act to include federal expenditure authority for the CRF funds. SCR 601 authorized expenditures made prior to October 5, 2020, and for the unspent and unobligated CRF funds provided recommended uses through grant programs administered by the Governor for:

---

1. South Dakota Article V, § 5 reads in part:

> The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his [sic] executive power and upon solemn occasions.

#29441

businesses, health care providers, non-profits, and qualified individuals that have been impacted by COVID-19.

[¶4.]     SDCL 4-8-17 provides:

> The Governor is authorized and empowered to accept on behalf of the state any appropriations made or moneys allotted to the state by the United States of America, as well as the provisions of any act of Congress appropriating or allotting such funds to the state to be used in cooperation with departments of the federal government and appropriations and acts of Congress.
>
> The funds received for the State of South Dakota pursuant to the provisions of this section shall be administered and expended under the immediate supervision of the Governor through such state departments as he [sic] shall designate for that purpose, and shall be deposited in the state treasury to be paid out by warrants drawn by the state auditor on vouchers approved by the Governor.

[¶5.]     Your request to this Court states that in administering the grant programs described in SCR 601, an application agreeing to the terms of the program is required. You further state that "A contract will be required in which the recipient agrees, among other terms and conditions, to expend its grant in accordance with the CARES Act and other restrictions provided for in federal law." According to SCR 601, "Applications [are] proposed to open October 12, 2020, and close on October 23, 2020."

[¶6.]     You have received inquiries from current state legislators as to their eligibility to receive funds from one or more of the grant programs. You ask:

> Assuming all other criteria is met to qualify, does the South Dakota State Constitution or any state law prohibit a current state legislator from being eligible to receive funds from a CRF Grant Program.

-2-

**B.**

[¶7.] The Court must first determine whether it is appropriate to issue an advisory opinion. You contend that this is an important issue of law involved in the exercise of your executive power pursuant to SDCL 4-8-17. You also contend that this is a solemn occasion because:

> Both the current pandemic and the large allocation of federal funds are unprecedented. Considering the proper expenditure of public funds, the potential conflict of interest, and the doctrine of separation of powers, this is a matter of great public importance and of significant impact on state government.

[¶8.] While South Dakota Article V, § 5 is disjunctive and presents two situations in which the Court can give an advisory opinion,[2] the Court agrees that the question you pose raises both an important question of law involved in the exercise of your executive power and a solemn occasion.

[¶9.] Pursuant to SDCL 4-8-17, you, as Governor, have accepted $1,250,000,000 in federal CRF funds and must administer and expend those funds within certain time constraints. Whether current legislators who passed HB 1001 and adopted SCR 601 are eligible to receive a part of these funds is a question that will "result in immediate consequences having an impact on the institutions of state government" and involve a question "that cannot be answered expeditiously through usual adversary proceedings." *In re Opinion of the Supreme Court Relative to the Constitutionality of Chapter 239, Session Law of 1977*, 257 N.W.2d 442, 447 (1977) (Wollman, J., concurring specially).

[¶10.] In addition, the query you have posed presents a solemn occasion.

---

2. *In re Daugaard*, 2011 S.D. 44, ¶ 4, 801 N.W.2d 438, 439.

> In determining whether a request for an advisory opinion presents a solemn occasion, the Court weighs whether an important question of law is presented, whether the question presents issues pending before the Court, whether the matter involves private rights or issues of general application, whether alternative remedies exist, whether the facts and questions are final or ripe for an advisory opinion, the urgency of the question, whether the issue will have a significant impact on state government or the public in general, and whether the Court has been provided with an adequate amount of time to consider the issue.

*In re Daugaard*, 2016 S.D. 27, ¶ 13, 884 N.W.2d 163, 167 (citing *In re Janklow*, 530 N.W.2d 367, 369 (S.D. 1995)). The Court has determined that you have presented an important question of law. *Id.* ¶ 8-9, *supra*. The issue is not pending before the Court. While the issue does involve private rights, it also raises a broader conflict of interest question involving a legislator's entitlement to appropriated funds, which is an issue with significant impact on State government and public perceptions associated with the distribution of such an extraordinarily large sum of money. Because of the unprecedented COVID-19 pandemic, the timeframe for administering and expending the funds, the inadequate time to pursue alternative remedies, and the Court's timely ability to consider the request, a solemn occasion exists and the Court will answer the question you pose.

## C.

[¶11.] Article III, § 12 of South Dakota's Constitution provides:

> No member of the Legislature shall, during the term for which he [sic] was elected, be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased during the term for which he [sic] was elected, nor shall any member receive any civil appointment from the Governor, the Governor and senate, or

from the Legislature during the term for which he [sic] shall have been elected, and all such appointments and all votes given for any such members for any such office or appointment shall be void; *nor shall any member of the Legislature during the term for which he* [sic] *shall have been elected, or within one year thereafter, be interested, **directly or indirectly**, in any contract with the state* or any county thereof, authorized by any law passed during the term for which he [sic] shall have been elected. (Emphasis added).

[¶12.]     In *Pitts v. Larson*, 2001 S.D. 151, ¶ 13, 638 N.W.2d 254, 257, this Court

explicitly stated, "The meaning of this provision, however, is unambiguous."

> The language of the constitution is plain. Its meaning cannot be mistaken. The purpose of [Article III, § 12] is apparent. It is intended to preclude the possibility of any member deriving, ***directly or indirectly***, any pecuniary benefit from legislation enacted by the legislature of which he [sic] is a member. . . . . It is intended to remove any suspicion which might otherwise attach to the motives of the members who advocate the creation of new offices or the expenditure of public funds. *Palmer v. State*, 11 S.D. 78, 80-81, 75 N.W. 818, 819 (1898). Therefore, "the language in the constitution must be applied as it reads." *In re Janklow*, 530 N.W.2d 367, 370 (S.D. 1995).

*Id.* (Emphasis added).[3]

[¶13.]     This Court strictly interprets the language of South Dakota Article III,

§ 12. *Asphalt Surfacing Co. v. South Dakota Dep't of Transp.*, 385 N.W.2d 115, 117

(S.D. 1986). Its prohibitions are broad in scope and extend to any contract between

a legislator and the State, including the General Appropriations Bill. *Id.* at 118.

"When Article III § 12 is violated, the 'contract is wholly illegal, void, and against

public policy, and cannot be enforced in whole or in part on any theory of any kind.'"

---

3.     In *Pitts*, the plurality and the dissent agreed that it is a violation of South Dakota Article III, § 12 for a state legislator to enter into a contract with the State during the same session in which s/he sat. 2001 S.D. 151, 638 N.W.2d 254.

#29441

*Pitts*, 2001 S.D. 151, ¶ 14, 638 N.W.2d at 258 (quoting *Norbeck & Nicholson Co. v. State*, 32 S.D. 189, 203, 142 N.W. 847, 848 (1913).

[¶14.]	Therefore, South Dakota Article III, § 12 precludes a current state legislator from contracting directly or indirectly with the State to receive funds from CRF Grant Programs.

Respectfully submitted this 22nd day of October 2020.

_____
David Gilbertson, Chief Justice

/s/ Janine M Kern
_____
Janine M. Kern, Supreme Court Justice

/s/ Steven R Jensen
_____
Steven R. Jensen, Supreme Court Justice

_____
Patricia J. DeVaney, Supreme Court Justice

Justice Mark E. Salter deeming himself disqualified did not participate.